THE CITY OF CHICAGO, in trust for use of schools, vs.
MARY B. GAGE et al. Appellees.—(ETHEL M. CANN
et al. Appellants.)

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. EMINENT DOMAIN—*the filing of a condemnation petition does
not oust every other court of jurisdiction to determine conflicting
claims.* The filing of a condemnation petition to ascertain the
compensation to be paid for property required for public use does
not oust other courts of jurisdiction, lawfully acquired, to deter-
mine conflicting claims concerning the property not in any manner
interfering with the appropriation of the property to a public use.

2. SAME—*if title is in litigation it is proper to order compen-
sation paid to the county treasurer.* If at the time a condemna-
tion petition is filed there is pending a chancery proceeding by an
owner of a certain interest in part of the property to have certain
tax deeds set aside as a cloud on title, the court has power to order
that that part of the compensation representing the amount claimed
to be due the holder of the tax deeds be paid to the county treas-
urer to abide the result of the chancery suit.

3. SAME—*it is proper, but not essential, that conflicting claims
be tried before the jury is empaneled.* In a condemnation case, if
there are conflicting claims of title by the defendants, it is proper
to require them to litigate and settle their interests before the jury
is empaneled to ascertain the compensation, but it is not essential
that this be done, and if it is not done the court may require the
parties to present their claims to the fund in the hands of the
county treasurer.

4. SAME—*petitioner's connection with case ceases when it pays
compensation to county treasurer.* The object of a condemnation
proceeding is to enable the petitioner to acquire the right to take
the property, and when the petitioner pays to the county treasurer
the compensation awarded by the jury the petitioner's connection
with the case ceases.

5. SAME—*compensation can be ascertained and paid without
disturbing jurisdiction of other courts over conflicting claims.* In
a condemnation case the compensation can be ascertained and the
money paid to the county treasurer without interfering with or
disturbing the jurisdiction acquired by any court to decide ques-
tions between conflicting claimants with respect to the title.

6. SAME—*what is a proper enforcement of equitable rights in
condemnation proceeding.* If a defendant in a condemnation pro-
ceeding claims that a deed made by him to a third party was in-

tended merely as a mortgage, it is proper for the court, in sustaining such claim, to protect the interests of the third party by requiring re-payment to him of the money advanced, together with the amount paid by him to the holder of a tax deed to clear the title which such defendant, in obtaining the loan, had represented to be free from liens and encumbrances.

7. CONSTITUTIONAL LAW—*amendment of 1913, entitling city to reimbursement, in condemnation suit, for money paid at tax sale, is invalid.* The amendment of 1913 to section 72 of the Local Improvement act, which purports to entitle a city holding an invalid tax deed to reimbursement for the amount paid, with interest, even in a condemnation proceeding, is unconstitutional, as being a discrimination in favor of cities and against the individual holders of invalid tax deeds, as such discrimination violates the due process of law guaranty of the constitution.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

FRANK W. SWETT, for appellant Ethel M. Cann; JOHN W. BECKWITH, Corporation Counsel, JOHN F. POWER, and TODD LUNSFORD, (CHARLES M. HAFT, of counsel,) for appellant the city of Chicago; RICE, LOWES & O'NEIL, for appellant Leslie C. Hughes.

JOHN R. O'CONNOR, for appellee Jacob Glos; THOMAS McENERNY, for appellee Benjamin J. Glaser.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Chicago, for the use of schools, filed its petition in the circuit court of Cook county asking the court to ascertain the compensation to be paid for twenty-two lots and parts of lots in block 1 in Bond's addition to Chicago. The petition named as persons interested in the property a great many persons and corporations claiming to be owners or lienholders as trustees under trust deeds, or unknown holders of notes secured by such trust deeds, or having other liens or claims. Among other persons and corporations so named were the appellants, Ethel M. Cann, Leslie

C. Hughes and the city of Chicago, and the appellees Jacob Glos and Benjamin J. Glaser. Preliminary to submitting to the jury the question of the amount of compensation, the court entered a rule requiring all the parties claiming an interest in the property, or liens thereon, to set forth in writing, by answer or cross-petition, the nature and amount of such interest and lien. This was done by the defendants by answers, cross-petitions or informal pleadings, which were treated as sufficient to enable the court to hear evidence and adjudicate the interests of the respective parties.

Ethel M. Cann and William A. Cann, her husband, by an answer alleged her ownership, in fee simple, of the undivided one-half of the south eight feet of lot 14 and of all of lots 15, 16, 17, 19 and 20 described in the petition, and Leslie C. Hughes, by what he called a cross-petition, set up his ownership, in fee simple, as tenant in common with Ethel M. Cann, of the remaining undivided one-half interest of the same lots and part of a lot.

Jacob Glos, by his amended answer, claimed title to the premises by virtue of tax deeds, and set forth the amounts paid for taxes, legal fees and costs in acquiring the deeds. He also alleged that on February 14, 1910, Ethel M. Cann and William A. Cann, her husband, filed their bill of complaint against him and a large number of other defendants, including Leslie C. Hughes, in the said circuit court, for partition of the premises, alleging that the tax deeds constituted clouds upon the title and offering to re-pay, as a condition of receiving relief, all sums of money paid at the tax sales and all sums expended in relation thereto, with interest and costs, and any other or further sums which the complainants ought to pay as a condition for setting aside the tax deeds. He further alleged that the issues in the cause were referred, on December 12, 1912, to a master in chancery, and that on October 2, 1914, he filed his cross-bill in the suit. He questioned the power of the court to compel him to litigate in the condemnation proceeding

the questions of which the court had acquired jurisdiction in the partition suit, and claimed the right to be reimbursed the amounts expended by him in the payment of taxes and special assessments and the costs of procuring deeds, together with legal interest. Ethel M. Cann and Leslie C. Hughes filed answers to the amended answer of Glos, disputing his claim of a right to reimbursement.

Benjamin J. Glaser answered the cross-petition of Leslie C. Hughes, denying that Hughes was the owner of an undivided one-half of the property and claiming the legal title thereto by a warranty deed executed by Leslie C. Hughes and wife on February 4, 1911, and also claiming title to lots 14 and 16 by a deed from Hiram Coombs and wife on November 15, 1911. He also alleged that Leslie C. Hughes applied to him for a loan of $1000, with interest at six per cent, and offered him the warranty deed; that he refused to loan the money unless the property was free and clear of encumbrances; that Hughes represented that he was the owner in fee simple and the same was free and clear, and stated in writing on the back of the note for the loan that he was the owner in fee simple and the title was free and clear and signed the statement; that the statement was false, as Hughes only owned an undivided one-half, subject to tax sales, deeds and other encumbrances, as he well knew; that the deed purported to convey all interest in the property; that he loaned Hughes $1000 and took the note dated February 6, 1911, for $1000, with six per cent interest, payable six months after date; that he found that Hiram Coombs had a tax deed on lots 14 and 16, and he purchased the interest of Coombs for $650, which was the amount paid for taxes and costs, and received a deed dated November 15, 1911, and that he had been made a party to the partition suit and compelled to enter his appearance and employ a solicitor and expend moneys to protect his interest. Leslie C. Hughes answered, alleging that the deed to Benjamin J. Glaser was security for the loan,

that usurious interest was retained by Glaser, and that the purchase from Coombs was without his consent or authority and not necessary, and Glaser was not entitled to be reimbursed what he had paid Coombs.

The city of Chicago filed an answer, alleging that it had paid out in purchases at tax sales for special assessments $1775.15, which, together with costs and interest, amounted to $2769.48, and claiming the right to reimbursement.

The court found that Ethel M. Cann was the owner of an undivided one-half of the property and Leslie C. Hughes the owner of the other undivided one-half; that the tax deeds held by Glos did not comply with all the requirements of the statute, but that Ethel M. Cann and husband by their bill had alleged that the deeds were clouds upon the title and asked to have them removed upon equitable terms, and the court had obtained jurisdiction in the partition suit, which was still pending, whether that sum should be awarded to Glos in accordance with the prayer of the bill or not; that the amount paid by Glos, including interest, was $665.44, and that said sum should be paid to the county treasurer, to be held until the partition suit should be determined. The court entered an order accordingly that the money should be deposited with the county treasurer, to be disposed of in the partition suit. Concerning the controversy between Leslie C. Hughes and Benjamin J. Glaser, the court decided that the warranty deed, although absolute on its face, was given to secure a loan of $1000, with interest; that Glaser refused to make the loan unless the property was free and clear from liens and encumbrances, which Hughes represented by a writing on the back of the note signed by him to be the fact, whereas in truth and in fact the lots had been sold for taxes; that in order to protect his title it became necessary for Glaser to pay $650 to secure a deed from Coombs, which was the amount that Hughes would have had to pay to remove the

cloud; that the amount of the loan, with interest at six per cent, and the money paid to Coombs, with interest at five per cent, were liens upon the interest of Hughes, and that the court having power to hear and decide the claim of Hughes that his deed was, in fact, a mortgage and enforce his equity, had power to require him to make reparation to Glaser so that injustice should not be done. The court found that the tax deeds held by the city of Chicago were void and the city was not entitled to reimbursement. There was the same decision respecting tax deeds held by the West Chicago Park Commissioners. Ethel M. Cann, Leslie C. Hughes and the city of Chicago prosecuted separate appeals from the findings and judgment, and the cases were consolidated in this court.

Ethel M. Cann and Leslie C. Hughes complain of the order of the court that the sum of $665.44 should be deposited with the county treasurer to be disposed of by the court in the chancery proceeding, in which the court had acquired jurisdiction in 1910 to determine his right to that money, and they contend that under the doctrine of *City of Chicago* v. *Pick,* 251 Ill. 594, and *Sanitary District of Chicago* v. *Munger,* 264 id. 256, the court should have ordered that money paid to them. Their position can only be sustained if the filing of a petition to ascertain the compensation to be paid for property required for the public use ousts every other court of jurisdiction, lawfully acquired, to determine conflicting claims concerning the property not in any manner interfering with the appropriation of the property to a public use, and evidently that is not so, either in reason or from any provision of the statute. The only purpose of the condemnation proceeding is to ascertain the amount of compensation to be paid, and that is the only question to be tried under the petition. The statute provides that payment of the compensation adjudged may in all cases be made to the county treasurer, who shall, on demand, pay the same to the party thereto entitled, and the

compensation can be ascertained and the money paid to the county treasurer in any case without in the slightest manner interfering with or disturbing the jurisdiction acquired by any court to decide questions between conflicting claimants. The Eminent Domain statute provides for the filing of a petition giving the names of all persons interested in the property, as owners or otherwise, as appearing of record, if known, or if not known, stating that fact. The petitioner is required to ascertain and allege the ownership of the lands sought to be taken, and the persons named in the petition as owners are not required to prove their title. (*Peoria, Pekin and Jacksonville Railroad Co.* v. *Laurie,* 63 Ill. 264; *St. Louis and Southeastern Railway Co.* v. *Teters,* 68 id. 144; *Chicago and Milwaukee Electric Railroad Co.* v. *Diver,* 213 id. 26; *Metropolitan Elevated Railway Co.* v. *Eschner,* 232 id. 210.) If a defendant files a cross-petition praying for an award of damages to land which is not taken he must allege in his petition his ownership of the property alleged to be damaged, and if the petitioner desires to test that allegation he must raise the issue by a denial and have it tried by the court before the submission of the question of damages to the jury. (*Chicago and Milwaukee Electric Railroad Co.* v. *Diver, supra.*) In every case such pleadings complete the issues between the petitioner and the defendants, and on trial before a jury the amount of compensation is the only issue. The object of the proceeding being to enable the petitioner to acquire the right to take the property, when the petitioner pays the money to the county treasurer the connection of the petitioner with the case ceases and it has no further concern with it. *Chicago and Northwestern Railway Co.* v. *Garrett,* 239 Ill. 297.

If there are disputes between the different defendants to a condemnation proceeding it is a proper practice to require them to litigate and settle their interests in the property before the court prior to the empaneling of the jury,

to the end that the amount to be paid to each owner or person interested in the property may be separately determined by the jury. (*Chicago and Northwestern Railway Co. v. Miller*, 233 Ill. 508; *Chicago and Milwaukee Electric Railroad Co. v. Diver, supra; Metropolitan Elevated Railway Co. v. Eschner, supra.*) But it is not essential that that should be done. If the conflicting claims are not presented before the jury trial the parties should be required to present their claims to the fund in the hands of the county treasurer. That was done in the case of *Chicago and Northwestern Railway Co. v. Glos*, 239 Ill. 24, where there was no determination before the trial as to the respective interests of the persons or corporations named in the petition as owners or interested in the premises, and the proceeding to determine who was entitled to the compensation money was had afterward. If the title to property condemned is in litigation in a pending chancery suit it is proper to order the money paid into the hands of the county treasurer, to abide the result of the chancery suit. That was decided in *Eddleman* v. *Union County Traction Co.* 217 Ill. 409, where a verdict was rendered finding the compensation for property taken, and it was ordered that the sum be paid to the county treasurer, to be held and paid out upon the order and decree of the circuit court of Union county in a case pending in that court in chancery. In that case there was a contest between George W. Smith and Dora E. Eddleman as to whether the latter was entitled to hold the property clear from Smith's right of redemption, and the right of the chancery court to determine that question was recognized. If the property is taken for public use the compensation money is deemed a substitute for the property, and a mortgagee or other lienholder has an equitable lien on the fund to the extent of his claim. (*Union Mutual Life Ins. Co. v. Slee*, 123 Ill. 57; *Calumet River Railway Co. v. Brown*, 136 id. 322; *Union Mutual Life Ins. Co. v. Chicago and Western Indiana Railroad Co.*

146 id. 320; *Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 id. 634; *Keller* v. *Bading,* 169 id. 152; *Stopp* v. *Wilt,* 177 id. 620; *Mayor and Council of Hagerstown* v. *Groh,* 101 Md. 560; 4 Ann. Cas. 943; 15 Cyc. 794.) In the case of *O'Connell* v. *Sanford,* 255 Ill. 49, the compensation money was paid to the county treasurer and he filed a bill of interpleader to have the rights of conflicting claimants determined. The argument for Ethel M. Cann and Leslie C. Hughes that when the State laid its hand upon the property in the exercise of the sovereign power of eminent domain the filing of the petition deprived the chancery court of the jurisdiction which it had acquired cannot be sustained.

In the argument for Glos it is contended that the court, in the condemnation proceeding, had no right to determine any question concerning his title or to find that he did not have the legal title, but no assignment of cross-error appears either in the original abstract filed by the appellants or the additional abstract filed by him. Therefore we will not consider the argument concerning supposed cross-errors, and the appellants do not, and could not, complain of the finding in their favor that Glos did not have the legal title.

The disposition of the $665.44 was properly committed to the chancery court.

The argument for Leslie C. Hughes against the claim of Benjamin J. Glaser is on the ground that a lien on property is determined by the agreement of the parties, and if Glaser was damaged by the misrepresentation of Hughes' he had his remedy against Hughes in a court of law. It is therefore contended that Glaser could not arbitrarily and without the consent of Hughes pay to Coombs the amount necessary to redeem from the tax sale and to remove the cloud. It is not denied that if either Glaser or Hughes had gone into a court of equity to have the cloud removed it would have been necessary to offer to re-pay to Glaser all necessary expenditures. Glaser had a warranty deed from

Hughes, and when Hughes asked the court to enforce his equitable right to the property and find the deed absolute on its face was a mortgage, equity required him to reimburse Glaser for what he had expended to protect his title. The court, in determining conflicting titles in the condemnation proceeding, is not restricted to legal titles but will ascertain the rights of the defendants, whether legal or equitable. (*Chicago and Northwestern Railway Co.* v. *Miller, supra.*) In upholding the equitable claim of Hughes it was the duty of the court to see that no injustice was done to Glaser, and the court did not err in the order made.

The city of Chicago complains that the court failed to allow to it the amount paid out at tax sales for special assessments, with costs and interest, amounting to $2769.48, and its claim is based upon section 72 of the Local Improvement act as amended in 1913. Prior to the amendment section 72 provided that any municipality interested in the question of any tax or special assessment might, in default of other bidders, become a purchaser at any sale of property to enforce the collection of the same. By the amendment this addition was made: "Any municipal corporation which holds any certificate of sale or tax deed acquired in pursuance hereof shall be entitled to reimbursement of the amount paid by it at such sale, including the costs and interest at the rate of five per cent; and no final judgment or decree shall be entered in any case either at law or in equity or in proceedings under the Eminent Domain act involving the title to or interest on any land in which such municipal corporation shall be a party, until reimbursement has been made to it as herein provided." (Laws of 1913, p. 165.)

This court had decided in *City of Chicago* v. *Pick, supra,* that the holder of an invalid tax deed was not entitled to reimbursement in case of condemnation of the property, and adhered to that decision in *O'Connell* v. *Sanford,* 256 Ill. 62, and *South Park Comrs.* v. *Berg,* 259 id.

268 – 16

447. It was held that a municipal corporation was in the same position as a natural person holding an invalid tax deed; that section 72 merely authorized municipal corporations to purchase real estate and acquire title thereto through a sale for delinquent taxes; that the effect of a sale of land for taxes is to extinguish the lien if the property brings the amount of the taxes, and that there is no distinction between municipalities and other purchasers exercising the privilege of bidding at a tax sale. Section 56 of the Local Improvement act provides that judgments for special assessments shall be a lien upon the property assessed from the date thereof, to the same extent and of equal force and validity as a lien for the general taxes, for five years if the assessment is payable in a single sum, and if payable in installments, until five years after the last installment becomes due. The lien is not different from any other, and when the property is sold for the amount of the lien the purchaser obtains the rights given by the statute and the lien is extinguished. The right of the owners to the possession of their property free from interference by the holder of a tax deed, whether an individual or a municipal corporation, is absolute unless the owner can be dispossessed, by ejectment or otherwise. It was held in *Conway* v. *City of Chicago,* 237 Ill. 128, that the city would discharge its full duty to a contractor when it perfected its title and tendered the deeds obtained on the tax sales to the contractor, but that was not because the law compelled the city to buy, but because it would fulfill its contract obligations by tendering the contractor what it had received. Under the decisions of this court the contractor could not claim reimbursement as the holder of void tax deeds, and if he could not, the city could have no greater right unless the law could discriminate between holders of tax deeds and give one a right not secured to all. The fact that there is a necessity for taxation and the payment of taxes,

so that all shall contribute to raising revenue in proportion to the value of their property, furnishes no distinction between individuals and corporations exercising the privilege of bidding at tax sales. Taxes and special assessments are presumed to be just and the owner ought to pay them, but the legislature cannot create any difference in right between individuals and corporations who see fit to pay taxes by purchasing the property at tax sales. There cannot be one law for one class and a different law for the other, with no essential difference. The invalidity of this act does not arise from the provision of section 22 of article 4 of the constitution forbidding special laws in enumerated cases, but results from the provision of section 2 of article 2 that no person shall be deprived of life, liberty or property without due process of law, and from the fourteenth amendment to the Federal constitution. Due process of law is synonymous with law of the land, and means general public law without discrimination. The act discriminates between buyers at tax sales who are in the same situation, and the citizen is protected against such legislation. (*Millett* v. *People,* 117 Ill. 294; *Harding* v. *People,* 160 id. 459; *Fiske* v. *People,* 188 id. 206; *Bailey* v. *People,* 190 id. 28.) A municipal corporation may exercise the privilege given by the statute in default of other bidders, but it cannot be given any right or privilege not accorded to other bidders, and it is wholly immaterial whether the lien for special assessments satisfied by the sale is in favor of the city or the people. The amendment is unconstitutional and the court did not err in denying to the city the right to reimbursement.

The judgments are affirmed.          *Judgments affirmed.*