### The People of the State of Illinois, Complainant, v. Isaac C. Ogden et al., Defendants.

### Hiram Coombs (Petitioner), Appellee, v. City of Chicago (Defendant), Appellant.

### Gen. No. 20,984.

1. TAXATION, § 662*—*when city holding invalid tax title not entitled to reimbursement out of surplus from tax sale.* In a peti-

---

tion filed in a bill to foreclose a tax lien, which petition prays an order directing a county treasurer to pay over to petitioner a surplus remaining after the tax sale decreed in the foreclosure action, where the fund is also claimed by a municipal corporation under Act of June 23, 1913, providing that a municipal corporation holding certificates of sale or tax deeds by virtue of Act of 1897, sec. 72 (J. & A. ¶ 1463), authorizing municipal corporations to purchase at tax sales in certain cases, shall be reimbursed to the amount paid by it at such sale before any final judgment shall be entered concerning the title to the land sold, a decree granting the relief prayed by the petition is not erroneous as being in conflict with such Act of June 23, 1913, although such reimbursement is not made by such decree, for the reason that such Act of June 23, 1913, has been declared unconstitutional.

2. TAXATION, § 662*—*when holder of invalid tax title entitled to reimbursement.* Under Hurd's Rev. St., ch. 120, sec. 224 (J. & A. ¶ 9443), providing that any judgment setting aside a tax deed shall provide for the reimbursement of the holder of such deed by the claimant as prerequisite to such claimant's having the benefit of such decree, the holder of a tax title is entitled to reimbursement *only* when such tax deed is set aside by the decree in question.

3. TAXATION, § 662*—*what does not constitute setting aside tax deed.* A decree awarding to the assignee of the owner of land sold for taxes a surplus remaining after such sale does not set aside a tax deed within the meaning of Hurd's Rev. St., ch. 120, sec. 224 (J. & A. ¶ 9443), providing for the reimbursement of the holder of a tax title where the tax deed is set aside by a judgment decree, notwithstanding the fact that such decree denies reimbursement to a municipal corporation holding an invalid certificate of the sale of the same land to it for nonpayment of assessments made against such land for local improvements.

4. EQUITY, § 151*—*what is effect of admissions in bill.* In a petition by the assignee of the owner of land sold for taxes, praying that a surplus remaining after the tax sale be awarded to him, the admission of a claimant under tax certificates that it "makes no claim in this suit as to the title" to the property in question, amounts to an admission that the tax certificates relied on are invalid.

5. TAXATION, § 662*—*when holder of invalid tax title not entitled to reimbursement.* The holder of an invalid tax deed is not entitled to be reimbursed for the amount paid in acquiring the tax title, whether such holder be a city or an individual.

6. ESTOPPEL, § 77*—*when assignee of surplus from tax sale not estopped to question right of city to reimbursement.* One to whom

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the owner of land sold for taxes has assigned his right to the surplus remaining after the sale is not estopped to question the right of a city to be reimbursed out of such surplus for the amounts paid at a sale of the same land to it for nonpayment of assessments for local improvements, by reason of the fact that such assignee had no greater rights than such assignor.

7. TAXATION, § 662*—*when city not entitled to reimbursement of amount paid at tax sale.* A decree awarding a surplus remaining after the sale of land for taxes to the assignee of the right of the owner of the land in such surplus does not violate the rule that one cannot profit by his own wrong, although such decree denies the right of a city to be reimbursed out of such surplus for amounts paid at a sale of the same land to it for nonpayment of assessments levied against the land to pay for local improvements.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed December 21, 1915.

## Statement of the Case.

At the time of the filing of the original bill in this cause, November 9, 1912, Isaac C. Ogden was and had been for more than twenty-five years the owner in fee simple of five certain lots in Cook county, Illinois. The bill was filed by the People, etc., under and by virtue of section 253 of the Revenue Act (J. & A. ¶ 9472), to foreclose the liens for certain unpaid taxes levied upon said lots and other property. Isaac C. Ogden, the City of Chicago and others were made parties defendant. Various proceedings were had and on March 19, 1913, a decree of sale was entered wherein it was ordered that William L. O'Connell, county treasurer and *ex officio* county collector of said Cook county, should sell said lots, with other property, to satisfy said tax liens, and that unless said lots were redeemed within two years from said sale according to law the defendants and all persons claiming under them should be forever foreclosed of all further

claim or right in the lots, and the county clerk should then issue a deed or deeds to the legal holders of the certificates of sale, etc. In pursuance of the decree the county treasurer duly offered for sale and did sell said lots on April 23, 1913, and, on May 17, 1913, filed his report of sale and the same was approved by the court. The report showed that at said sale the lots sold for an amount more than sufficient to pay all moneys due under the decree, together with costs, and that there remained in the hands of the county treasurer, out of the proceeds of the sale of said lots, a surplus of $1,252.25, to be distributed and paid as the Circuit Court should direct.

After the entry of said decree of sale, and after said sale, to wit, on or about October 9, 1913, Isaac C. Ogden (the owner of the lots at the time of said sale) and one Joseph Rushkewicz entered into an agreement for the sale by Ogden to Rushkewicz of said lots and for an assignment by Ogden to Rushkewicz of said surplus in the hands of the county treasurer. Pursuant to said agreement Ogden and wife, by quitclaim deed, dated October 9, 1913, and recorded October 14, 1913, conveyed said lots to Rushkewicz, and at the same time assigned all of Ogden's right, title and interest in and to said surplus to Rushkewicz. Thereafter, on October 14, 1913, Rushkewicz by an instrument in writing duly assigned to Hiram Coombs all of his (Rushkewicz') right, title and interest in and to said surplus.

Subsequently, on October 27, 1913, Hiram Coombs filed his petition, entitled in said original cause, *People, etc., v. Isaac C. Ogden et al.,* in said Circuit Court, making all of the defendants in said original cause, and also said Joseph Rushkewicz, parties defendant to his petition, and setting up the above mentioned facts, and praying that the court enter an order directing the county treasurer to pay over said surplus of $1,252.25 to him (Coombs). Rushkewicz and Ogden filed answers admitting the allegations of the petition to be

true and making no objections to the court entering an order in accordance with the prayer of the petition. The People, etc., and William L. O'Connell, county treasurer, filed a joint and several answer in which they admitted that such a surplus, amounting to $1,252.25, was in the hands of the county treasurer, and disclaimed all right or interest therein, and alleged that said county treasurer held the same for the benefit of such person or persons as should appear entitled thereto and subject to the order of the Circuit Court. The City of Chicago filed an answer in which it denied that the petitioner (Coombs) was entitled to said surplus, and alleged that "it has a first and prior *lien on said surplus money* by virtue of certain special assessments levied pursuant to law for public improvements affecting the said property in said petition described, and that said assessments so levied were unpaid and that the *amount of unpaid assessments* now due the said City of Chicago amounts to the sum of $1,000, and that the said property *was sold* to this defendant in pursuance of the said statute in such case made and provided as shown by the records of the Recorder of Deeds of Cook County, Illinois, and said defendant stands ready to produce said special assessment records, together with all certificates and *tax deeds* pertaining to the same." The city in its answer prayed that the petition of Coombs be dismissed and that the court enter an order directing the county treasurer out of said surplus money to pay to the city the sum due to it "under and by virtue of its *liens* hereinabove described for unpaid special assessments."

On November 6, 1913, the court ordered that said petition together with all answers and pleadings thereto be referred to a master in chancery to take proofs and report the same together with his conclusions thereon. On the hearing before the master, after the petitioner Coombs had introduced his evidence and had rested his case, the city offered in evidence cer-

tain purported tax deeds of the, property to it. Upon objections being made thereto, the solicitor for the city stated: ''The purpose of the offer *is not for the purpose of indicating an adverse title;* it is merely to indicate that the City of Chicago has pursued the taxes to such an extent as the statute permits them to pursue it for the purpose of protecting their lien acquired under the judgment in the county court, in confirmation of a special assessment; * * * *we do not want to prove title by the tax deed.*'' On January 23, 1914, the master made a report in which he stated that ''no claim is made by the City of Chicago to said surplus by reason of the sale to it of the premises in question for unpaid taxes and the subsequent issuance to it of tax deeds thereon; nor were said tax deeds offered for the purpose of showing a title adverse to that of petitioner's assignor (Rushkewicz), but to evidence merely that the city had pursued one of the methods specifically given it by statute to enforce its right to reimbursement for improvements made,'' and in which he expressed the opinion that the petitioner (Coombs) was entitled to the relief prayed for, and recommended that the court enter an order directing the county treasurer to pay said surplus in his hands to said petitioner. Before said report was filed in the Circuit Court the City of Chicago, on January 30, 1914, applied for leave to file *instanter* an amendment to its answer to the petition of Coombs. Such leave was granted and the amendment filed, and the same was referred to said master to hear evidence and report his conclusions of law and fact at the same time he made his report on said petition and the original answer of the city thereto. In said amendment the city alleged that the petitioner (Coombs) was not entitled to said surplus because the city ''is and for a considerable time has been the *owner of the premises* out of which it is claimed said surplus arose,'' and the city prayed that ''if any order or decree is entered dis-

tributing said surplus, that said decree provide that it be paid to this defendant, but that if the court should decree that for any reason said Coombs is entitled to the surplus, then said decree should provide that there first be paid out of said surplus *the amount paid out by the city at certain tax sales* at which it bought in the property in question in default of other bidders, together with the interest on said amount and the costs of this defendant, *amounting in all to the sum of $908.95."* On February 28, 1914, the master made a supplementary report in which he stated that in his opinion "the filing by the City of Chicago of its amended answer herein does not in any way alter or change the city's status in said proceeding or effect the findings and conclusions contained in the master's original report herein, and he therefore recommends that the prayer of the petition of Hiram Coombs be granted and that a decree or order in conformity therewith be entered." It appears from the supplemental report that after the second order of reference, entered January 30, 1914, further evidence was heard before the master. It further appears that on this hearing it was agreed between the petitioner and the City of Chicago that "*the city makes no claim in this suit as to the title in it to any of the property in evidence,* and that the master need make no report thereon." Objections by the city to the original and supplemental reports were filed and overruled. Both the original and supplemental reports were filed in the Circuit Court on March 16, 1914, and on that date the Circuit Court, after overruling exceptions thereto, approved said reports and entered a final order or decree directing the payment of said surplus to the petitioner, Coombs, and that the master's fees and costs be paid by the City of Chicago. By this appeal the City of Chicago seeks to reverse said order or decree.

JOHN W. BECKWITH, for appellant; CHARLES M. HAFT and WILLIAM J. NAUGHTON, of counsel.

ROBERT ZALESKI, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

It is contended by counsel for the City of Chicago that the decree should be reversed because it is in violation of section 72 (as amended) of the "Act concerning Local Improvements," in force July 1, 1897. (J. & A. ¶ 1463.) Section 72, prior to its being amended, provided that:

"Any city, village or town interested in the collection of any tax or special assessment, may, in default of other bidders, become a purchaser at any sale of property to enforce the collection of the same, and may, by ordinance, authorize and make it the duty of one or more municipal officers to attend such sales and bid thereat in behalf of the corporation."

By an Act approved June 28, 1913, in force July 1, 1913, said section 72 was amended by adding the following:

"Any municipal corporation which holds any certificate of sale or tax deed acquired in pursuance hereof shall be entitled to reimbursement of the amount paid by it at such sale, including the cost and interest at the rate. of five per cent (5%); and no final judgment or decree shall be entered in any case either at law or in equity or in proceedings under the eminent domain act involving the title to or interest on any land in which such municipal corporation shall be a party, until reimbursement has been made to it as herein provided."

Counsel for the city argue that by reason of the provisions contained in said amendment to said section the court should not have entered a decree giving said surplus in the county treasurer's hands to the petitioner, Coombs, until said petitioner had reimbursed the city for its expenditures, including costs and interest, at the sales of the property in question for special assessments in default of other bidders. We think it

is a sufficient answer to the contention to say that, subsequent to the filing of counsel's brief in this court, our Supreme Court has declared that portion of section 72 as amended in 1913 to be unconstitutional. *City of Chicago v. Gage,* 268 Ill. 232, 243.

It is also contended by counsel that the decree should be reversed because it is in violation of the provision contained in section 224 of chapter 120 of the Revised Statutes of Illinois (J. & A. ¶ 9443), as follows:

"That any judgment or decree of court, *setting aside any tax deed* procured under this act, shall provide that the claimant shall pay to the party holding such tax deed all taxes and legal costs, together with all penalties, as provided by law, as it shall appear the holder of such deed, or his assignors, shall have properly paid or be entitled to in procuring such deed, before such claimant shall have the benefits of such judgment or decree."

We cannot agree with the contention. The order or decree appealed from does not set aside any tax deed. It has several times been decided by our Supreme Court that a tax title holder, by virtue of said provision in section 224, is entitled to be reimbursed *only* when the tax title is set aside. *Riverside Co. v. Townshend,* 120 Ill. 9; *Gage v. Eddy,* 186 Ill. 432; *City of Chicago v. Pick,* 251 Ill. 594, 600. Furthermore, as we view it, the admission on the hearing that "the city makes no claim in this suit as to the title in it of any of the property in evidence" amounted in effect to an admission that its tax deeds were not valid, and it has also been decided that the holder of an invalid tax deed is not entitled to reimbursement for the amount of money expended in acquiring the tax title (*City of Chicago v. Pick, supra; O'Connell v. Sanford,* 255 Ill. 49; *South Park Com'rs v. Berg,* 259 Ill. 447); and that this rule applies where a city is the holder of such a tax deed as well as where the holder is an individual (*O'Connell v. Sanford,* 256 Ill. 62).

And we do not think there is any merit in the contention that the petitioner, Coombs, having no greater rights than Ogden, is estopped to claim that the city is not entitled to be paid out of said surplus the amount it expended in procuring said tax deeds, or in the further contention that the decree in effect violates the law that a man cannot take advantage of his own wrong.

We are of the opinion that the decree of the Circuit Court should be affirmed.

*Affirmed.*