Yellow Cab Company, Appellee, v. Harold A. Howard and John C. Howard, Trustees under the Last Will and Testament of Sarah J. Howard, Deceased, Appellants.

## Gen. No. 31,082.

1. EMINENT DOMAIN—*where transfer of title effected by judgment and not by private sale.* Where the day before judgment was entered in a condemnation suit the owner of the property conveyed it to the condemnor for a consideration identical with the amount of the verdict, with certain deductions, but judgment therefor was not made until after the judgment was entered, held in view of all the circumstances that the property was transferred by virtue of the condemnation judgment and not by private sale, and the owner was therefore liable to a lessee, who was not a party, as for money received, to the extent of the value of the unexpired term of the leasehold, since the condemnation judgment included the value of the leasehold.

2. ASSUMPSIT—*evidence admissible in lessee's action against owners for money had and received as result of condemnation proceeding.* In an action by the lessee of real property against the owners thereof for money had and received by the latter as a result of a proceeding condemning part of the property for the purpose of widening a city street, held that evidence of defendants' commencement of an action against plaintiff for rent was admissible as tending to discredit the testimony of one of the defendants that he ''sold'' the condemned part of the property to the condemnors.

3. EMINENT DOMAIN—*lessee's right of action against owners to whom amount of condemnation award was paid for money had and received.* The lessee of real property, who was not a party to condemnation proceedings for the purpose of widening a city street, has a right of action against the owners of the property to whom the amount of the condemnation award was paid, for money had and received, to the extent of the value of the leasehold.

4. ASSUMPSIT—*when action of assumpsit for money had and received will lie.* The general rule is that the action of assumpsit for money had and received will always lie whenever one person has received money which belongs to another and which in equity and justice should be returned, and it is not necessary that there should be any privity of fact between the parties.

5. EMINENT DOMAIN—*when payment of condemnation award to county treasurer is proper.* Where the lessee of real property does not intervene in a proceeding to condemn a part of the property for the purpose of widening a city street, it is proper under section 14 of the Eminent Domain Act, Cahill's St. ch. 47, ¶ 14, for the condemnors to pay the amount of the award to the county treasurer.

6. EMINENT DOMAIN—*effect and scope of condemnation award.* The jury's award in a condemnation proceeding stands in place of the property taken and includes all interests in the property.

7. EMINENT DOMAIN—*effect of lessee's failure to intervene in condemnation proceeding.* The fact that the lessee of real property did not intervene in a proceeding to condemn a part of the property for the purpose of widening a city street did not preclude such lessee from suing the owners of the property to whom the amount of the award was paid for money had and received.

8. EMINENT DOMAIN—*damages recoverable by lessee when condemnors pay owners of property.* In an action by the lessee of real property against the owners thereof for money had and received by the latter as a result of a proceeding condemning part of the property for the purpose of widening a city street, held that the trial court correctly estimated the plaintiff's damages.

9. EMINENT DOMAIN—*damages to leasehold interest where only part of property taken.* Where nearly three-quarters of a tract was taken on condemnation and the remainder was not susceptible of occupation under the lease for a purpose substantially similar to the one for which the original property was used under the lease, in determining the value of the leasehold, the rule applicable in cases where the entire leasehold is taken, controls.

10. EMINENT DOMAIN—*measure of lessee's compensation when entire property condemned.* Where the entire leasehold interest of a lessee is taken under the power of eminent domain, the lessee's compensation is the value of the leasehold estate, subject to the rent cov-

enanted to be paid; if the value exceeds the rental, the lessee will be entitled to recover the excess; if it does not exceed the rental, the lessee will be entitled to nothing.

11. TRIAL—*when proposition of law offered in action tried before court without jury should be refused.* When a proposition of law offered by a party to an action tried before the court without a jury does not state the law that is applicable to the facts, such proposition should be refused.

Appeal by defendants from the Municipal Court of Chicago; the Hon. CHARLES F. McKINLEY, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1926. Affirmed. Opinion filed February 7, 1927. Rehearing denied February 18, 1927.

NORMAN K. ANDERSON and BENJAMIN CLARKE, for appellants.

D'ANCONA & PFLAUM, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an action for money had and received, brought by the Yellow Cab Company, the plaintiff, against Harold A. Howard and John C. Howard, trustees under the will of Sarah J. Howard, deceased, the defendants, to recover an alleged award paid to the defendants in a condemnation proceeding instituted by the South Park Commissioners to condemn property of which the defendants were the owners and the plaintiff was the lessee.

The case was tried before the court without a jury. The court found the issues against the defendants and assessed the plaintiff's damages at the sum of $6,-434.40. From the judgment on the finding the defendants prosecuted the present appeal.

The property in question fronted on South Park Avenue, a thoroughfare in the city of Chicago running in a northerly and southerly direction. The property was improved by a one-story garage building with a

frontage of 112 feet and a depth of 180 feet. The building had a floor space of 20,000 square feet. The plaintiff had a lease from the defendants for the garage building for a term of ten years ending March 31, 1925, at an increasing rental, which, in 1923 at the time of the condemnation proceeding, amounted to $6,000 a year. At the time of the condemnation proceeding, the unexpired portion of the lease was one year and nine months. The plaintiff paid the rent up to July 1, 1923. The condemnation proceeding, which was begun on February 3, 1922, was brought for the purpose of widening South Park Avenue, and included in the property sought to be condemned the east 132 feet of the property in question. The defendants were made parties to the proceeding but did not enter their appearance or make any contest. The plaintiff was not made a party other than by the description "all whom it may concern." A jury found "the just compensation to be paid to the owner or owners of, and parties interested in" the property in question to be $65,448.70, which was the identical amount at which the value of the property had been fixed in the assessment roll filed in the condemnation proceeding. On April 18, 1923, judgment was entered on the verdict of the jury. Before the entry of the judgment, but after the condemnation proceeding had been begun, the defendants entered into negotiations with the attorneys for the South Park Commissioners which resulted in an alleged sale of the part of the defendants' property sought to be condemned, namely, the east 132 feet, to the South Park Commissioners at an agreed price of $65,448.70, less the taxes for 1922, the cost of the examination of the title and the amount of the special assessment which was assessed against the property in the condemnation proceeding. These deductions totalled $3,162, leaving a balance of $61,286. On April 17, 1923, the defendants delivered a warranty deed to the attorneys for the South Park Commissioners con-

veying the east 132 feet of the property in question to the South Park Commissioners.  On April 21, 1923, the attorneys for the South Park Commissioners delivered to the defendants the check of the South Park Commissioners for the amount of $61,286.  The check was dated April 16, 1923, and the warranty deed had been acknowledged on April 17, 1923.  The defendant Harold A. Howard testified that the attorneys for the South Park Commissioners had been holding the check and deed for some time previous to their delivery; that he "had been after" the check "every day"; that he had demanded his money repeatedly.  The check on its face shows that the $61,286 was paid to the defendants "For Tract No. 16."  There is no other description of the property in question on the check. The warranty deed does not refer to the property in question as "Tract No. 16," but in the judgment order in the condemnation proceeding the property is referred to as "Tract No. 16."

Elmer J. Whitty, secretary of the South Park Commission, called as a witness on behalf of the defendants, testified that he was not connected with the South Park Commission on April 16, 1923; that he became connected with the commission in June, 1924; that "inside the check it says 'As per bill rendered, contract No. 16, account B-58' "; that "it refers to the account upon which money was paid"; that "it was paid under the real estate account of the South Park Board"; that he is "not sure of that account"; that "it was in connection with the condemnation proceeding of the widening of South Park Avenue"; that "the amount was arrived at in no other way, than it was the judgment entered by the court in the condemnation proceedings"; that the check was given to pay the judgment; that he does not know why there is a difference between the amount of the check and the judgment.

On April 15, 1923, the South Park Commissioners served notice on the plaintiff to vacate the premises. By about the first week of July, 1923, the premises were completely vacated. During the first week of July, 1923, the South Park Commissioners took possession of the east 132 feet of the property in question, wrecked the east 132 feet of the building, leaving 48 feet. After May 1, 1923, the plaintiff paid no rent to the defendants, and the defendants never demanded any rent from the plaintiff. The plaintiff never paid any rent to the defendants for the 48 feet that were left.

The defendants were absent from Chicago from June 1, 1923, to October, 1923. In October, 1923, the defendants had a new front put on what remained of the building and leased the building at a rental of $250 a month to a tenant that used it for a service station for automobiles. At the time of the trial in the present case, the building had been leased by the defendants to a tenant that was using it as a service station for automobiles. The evidence shows that after the plaintiff began the present action against the defendants for money had and received, the defendants commenced an action against the plaintiff to recover rent alleged to be due from the plaintiff to the defendants under the lease, not for the remaining 48 feet, but for the entire property in question. The total amount claimed to be due was $3,000, of which $1,500 was alleged to be due on July 1, 1923, and $1,500 on October 1, 1923.

It is contended by counsel for the defendants that the South Park Commissioners did not acquire the property in question by the condemnation proceeding, but in a sale in which they purchased the property from the defendants; and that therefore the plaintiff has no right of action against the defendants. Counsel for the defendants contend that the South Park Commissioners abandoned the condemnation proceeding in so far as the defendants were concerned, purchased the defendants' interest only, and left the leasehold

interest of the plaintiff still to be acquired. In support of their contentions counsel for the defendants cite the cases of *Uhland Club v. Schupbach,* 168 Mass. 430, and *Follansbee v. Jersey City,* 97 N. J. Eq. 489. Counsel for the defendants further contend that the South Park Commissioners could have been enjoined by the plaintiff from taking possession of the property until they paid the plaintiff the value of the plaintiff's leasehold interest, citing the case of *Follansbee v. Jersey City, supra;* that when the deed of the defendants was delivered to the South Park Commissioners the property in question became public property, the court lost jurisdiction in the condemnation proceedings and should have dismissed the proceedings as to the defendants.

In assuming the position that they have taken, counsel for the defendants at once are confronted with the undisputed fact that the amount agreed upon between the South Park Commissioners and the defendants as to the alleged purchase price for the property in question was the identical amount found by the jury in the condemnation proceeding to be "the just compensation to be paid to the owner or owners of and parties interested in" the property in question. The amount of the jury's award was $65,448.70. Harold A. Howard, one of the defendants, testified that the "sale price" was $65,448.70; and that that was the amount for which the defendants sold the property to the South Park Commissioners, less what the South Park Commissioners deducted. In view of the singular coincidence that the "sale price" was the same amount as the jury's award, which included compensation for all interests in the property, it would seem to be very difficult for counsel for the defendants to argue with any degree of probability that the "sale price" was exclusive of the leasehold interest of the plaintiff. The "sale price," in our opinion, included the value of the plaintiff's leasehold interest and did not represent

solely the interest of the defendants. This conclusion is unavoidable unless we assume that the South Park Commissioners were of the opinion that the award of the jury was erroneous, and that the jury should have allowed as compensation to the defendants $65,448.70 exclusive of the leasehold interest of the plaintiff. Such an assumption is highly improbable, as it is unreasonable to suppose that the South Park Commissioners would ignore the jury's award and voluntarily render themselves liable to pay more for the property than the jury allowed. It will be observed that the fact that the amount of the "sale price" and the amount of the jury's award were identical is a very significant fact. There are other facts which tend to show that the transaction between the South Park Commissioners and the defendants was not a voluntary sale, but was a payment of the jury's award in the condemnation proceeding. The negotiations between the defendants and the attorneys for the South Park Commissioners were not begun until after the commencement of the condemnation proceeding. The part of the property in question alleged to have been sold to the South Park Commissioners by the defendants is the precise part that was proposed to be taken in the condemnation proceeding, namely, the east 132 feet. The check sent to the defendants by the South Park Commissioners referred to the property in question as "Tract No. 16," which reference does not appear in the description of the property in the deed, but does appear in connection with the property in question in the judgment in the condemnation proceeding. Included in the deductions which the South Park Commissioners made from the "sale price" was the amount of the special assessment, which had been levied against the property in question in the condemnation proceeding. After the alleged sale the defendants made no demand on the plaintiff for rent for the remaining 48 feet, apparently assuming that the condemnation proceeding terminated the lease-

hold interest of the plaintiff. In January, 1924, however, about nine months after the alleged sale of the property in question, the defendants began an action in the municipal court of Chicago against the plaintiff to recover the full quarterly rent under the lease between them and the plaintiff alleged to be due on July 1, 1923, and October 1, 1923. In other words, the action was brought for the full quarterly rent claimed to have accrued after the alleged sale of the property in question by the defendants to the South Park Commissioners. Counsel for the defendants in their reply brief state that the evidence showing the action in the municipal court was inadmissible in the case at bar, and that the evidence was objected to on the trial. No contention whatever, in fact no reference whatever, is made in the original brief of counsel for the defendants in regard to the inadmissibility of the evidence. Furthermore, we think that the evidence was admissible as tending to discredit the testimony of the defendant, Harold A. Howard, in which he stated that he "sold the property" in question to the South Park Commissioners. Another fact tending to show that the transaction between the defendants and the South Park Commissioners, in regard to the property in question, was not a sale is that the check of the South Park Commissioners was not sent to the defendants until April 21, 1923—three days after the judgment in the condemnation proceeding was entered. It is true that the deed of the defendants was sent to the South Park Commissioners on April 17th, the day before the judgment in the condemnation proceeding was entered. But the fact that the South Park Commissioners withheld payment of the money to the defendants until after the entry of the judgment in the condemnation proceeding is a circumstance tending to connect the payment of the money with the condemnation judgment. Furthermore, although the defendants demanded the money repeatedly from the attorneys for the South Park Com-

missioners, according to the testimony of the defendant Harold A. Howard, nevertheless the money was not paid until after the entry of the judgment in the condemnation proceeding.

We are of the opinion that the transaction between the defendants and the South Park Commissioners should not be treated as a sale, but as a payment of the award in the condemnation proceeding. In opposition to this conclusion counsel for the defendants contend that it is unreasonable to suppose that the South Park Commissioners intended the payment as a payment of the jury's award which included the interests of all parties in the property in question, since such a payment would have included the amount of the plaintiff's leasehold interest in the property in question; and that further, since the South Park Commissioners are required by section 14 of the Eminent Domain Act [Cahill's St. ch. 47,¶14] to pay the amount of awards in condemnation proceedings to the county treasurer, if the transaction between the defendants and the South Park Commissioners should be treated as a payment of the jury's award in the condemnation proceeding, then the South Park Commissioners would be liable to pay again the amount of the plaintiff's leasehold interest in an action that might be brought by the plaintiff against the South Park Commissioners. In support of their contentions counsel for the defendants cite the cases of *Follansbee v. Jersey City, supra; Bartlow v. Chicago, B. & Q. R. Co.,* 243 Ill. 332; *South Park Com'rs v. Todd,* 112 Ill. 379. Assuming for the sake of argument that counsel for the defendants have correctly stated the law, there is force in their argument. Yet, we think that the preponderance of the evidence shows that the South Park Commissioners did intend the payment as a payment of the jury's award in the condemnation proceeding. Furthermore, if they did not so intend but considered the payment as a payment in a sale, then, according to the con-

tention of counsel for the defendants, they would have been liable to the plaintiff for the plaintiff's leasehold interest and could have been enjoined by the plaintiff from taking possession of the property in question until they paid for the plaintiff's leasehold interest. We are not inclined to impute to the South Park Commissioners an intent which would produce such a situation. In our opinion the South Park Commissioners in dealing with the defendants overlooked the fact that the plaintiff had a leasehold interest in the property in question, and made a payment of the award to the defendants without deducting the value of the plaintiff's leasehold interest from the award.

As tending to support their contention that the transaction between the defendants and the South Park Commissioners was a sale and not a payment of the jury's award in the condemnation proceeding, counsel for the defendants maintain that the following facts are of controlling importance: That the South Park Commissioners deducted from the amount paid to the defendants the taxes for the year 1922 and the charge of the Chicago Title & Trust Company for the legal opinion it furnished as to the validity of the title of the property in question; that the notice which the South Park Commissioners served on the plaintiff to vacate the property in question was served before the judgment in the condemnation proceeding was entered; that the deed from the defendants to the South Park Commissioners was delivered to the South Park Commissioners before the judgment in the condemnation proceeding was entered.

We admit that these facts relied on by counsel for the defendants weaken the strength of our conclusion that the transaction should be treated as a payment of the jury's award in the condemnation proceeding; but we think that when all of the evidence is considered these facts do not render such a conclusion unwarrantable. We clearly are of opinion that when all the

evidence is considered, for the purpose of ascertaining the intent of the defendants and the South Park Commissioners in regard to the nature of the transaction, it is apparent that neither the defendants nor the South Park Commissioners intended that the transaction should constitute an actual sale of the property in question, wholly independent of the jury's award in the condemnation proceeding, but that they intended that the transaction should be, in legal effect, a payment of the jury's award.

Counsel for the defendants further contend that if it should be conceded that the transaction between the defendants and the South Park Commissioners was a payment of the jury's award in the condemnation proceeding, such payment would include the plaintiff's leasehold interest in the property in question, and that the plaintiff's right of action would be only against the South Park Commissioners and not against the defendants. In support of their contention counsel for the defendants cite the cases of *Follansbee v. Jersey City, supra; Bartlow v. Chicago, B. & Q. R. Co., supra,* and *South Park Com'rs v. Todd, supra.*

We do not think that it is necessary for us to decide the question whether the plaintiff has a right of action against the South Park Commissioners. It is sufficient to say that in our view, even though the plaintiff may have a right of action against the South Park Commissioners, as counsel for the defendants contend, the plaintiff also has a right of action against the defendants. The general rule, which is a familiar one, is that the action of assumpsit for money had and received will always lie whenever one person has received money which belongs to another and which in equity and justice should be returned. *Leigh v. American Brake-Beam Co.,* 205 Ill. 147, 153; *Wilson v. Turner,* 164 Ill. 398, 403. It is not necessary in order to maintain the action that there should be any privity in fact between the parties. *Board of Highway Com'rs*

*v. City of Bloomington,* 253 Ill. 164, 177. It is also the specific rule that in a condemnation proceeding "if damages are assessed and paid to one as owner who is not the true owner, he will be liable to the true owner in an action for money had and received, or otherwise made to account to the true owner." Lewis on Eminent Domain, § 894, pp. 1555, 1556 (3rd Ed.).

It is true, as counsel for the defendants maintain, that, on the theory that the payment to the defendants by the South Park Commissioners was a payment of the jury's award in the condemnation proceeding, since the plaintiff did not intervene in the condemnation proceeding, it would have been proper under section 14 of the Eminent Domain Act [Cahill's St. ch. 47, ¶ 14] for the South Park Commissioners to have paid the amount of the award to the county treasurer. In the case of *City of Chicago v. Gage,* 268 Ill. 232, the court said (pp. 237, 238, 239):

"The statute provides that payment of the compensation adjudged may in all cases be made to the county treasurer, who shall, on demand, pay the same to the party thereto entitled, and the compensation can be ascertained and the money paid to the county treasurer in any case without in the slightest manner interfering with or disturbing the jurisdiction acquired by any court to decide questions between conflicting claimants.   *   *   *

"If there are disputes between the different defendants to a condemnation proceeding it is a proper practice to require them to litigate and settle their interests in the property before the court prior to the empaneling of the jury, to the end that the amount to be paid to each owner or person interested in the property may be separately determined by the jury.   *   *   *   But it is not essential that that should be done. If the conflicting claims are not presented before the jury trial the parties should be required to present their claims to the fund in the hands of the county treasurer."

The jury's award in a condemnation proceeding stands in place of the property taken and includes all interests in the property. *Aldrich v. R. J. Ederer Co.,* 302 Ill. 391, 395; *City of Chicago v. Gage, supra,* p. 239.

In our opinion, the fact that the plaintiff did not intervene in the condemnation proceeding did not preclude the plaintiff from maintaining the present action against the defendants for money had and received. This precise question has not been decided by the Supreme Court of Illinois, but the following well-considered cases support our conclusion: *State ex rel. Long v. Superior Court for Lewis County,* 80 Wash. 417, 423; *Harris v. Howes,* 75 Me. 436; *McAllister v. Reel,* 53 Mo. App. 81, 84.

In the case of *State ex rel. Long v. Superior Court for Lewis County, supra,* which was an action in regard to an award in a condemnation proceeding, it appeared that the owner of a leasehold was not made a party in condemnation proceedings where an award was made for the full value of the land in which he had the leasehold. The court said (p. 423):

"Our statute provides that the proceeding shall run against the record owners * * *. When, therefore, a lessee has not made his interest to appear of record, and the court has made an assessment in gross, the claim of the lessee is not against the petitioner, but against the fund. He may appear in the original proceeding; he may ask an apportionment of the award under sections 929-931; he may proceed in equity independent of the statute * * *, or by way of an action for money had and received."

In the case of *Harris v. Howes, supra,* which was an action for money had and received involving a controversy in respect of an award in a condemnation proceeding, the court said (pp. 438, 439):

"By the fault or mistake of both of the present parties, one award only was made. The plaintiff mistook in not claiming, and the defendants in not disclaiming,

the right to recover the lessee's damages.  We do not see why a bill in equity would not lie to rectify the mistake, nor why the present action cannot be sustained for such purpose.  Certainly, the defendants have money in their hands which equitably and fairly belongs to the plaintiff.  There can really be no more difficulty for this court to determine the relative sums belonging to the parties, than for county commissioners to work out the result.  The duty of the commissioners would have been first to ascertain the entire damages and then apportion them.  Nor is it unusual in such proceedings in many of the states, for an award to be made in gross, and the division to be made afterwards according to ownerships.''

In the case of *McAllister v. Reel, supra,* which was an action for money had and received, the evidence showed that both the owner of property and the owner of a leasehold interest in the property appeared in condemnation proceedings brought to condemn the property, but that the owner of the leasehold did not file exceptions to the report of the commissioners in the condemnation proceeding, and the commissioners did not apportion the damages.  The court said (p. 85):

''The defendant admits that the plaintiff was his lessee; that the lease had several years to run; and that the larger portion of the house was condemned and removed.  He also admits that he received the entire award.  The report of the commissioners conclusively shows that the entire damages to the property were assessed.  Certainly, under this evidence, the defendant has money in his hands which equitably and fairly belongs to the plaintiff, and which the defendant must pay.  The facts relied on by him to estop the plaintiff from making his claim are insufficient.  The plaintiff and the defendant are equally to blame for the failure of the commissioners to apportion the award.  The former ought to have insisted on it being done, and defendant ought to have disclaimed the right

to recover the plaintiff's portion. But the failure of the plaintiff to object to the award, or to notify the defendant of his legal right to a portion of the money, did not make out a case of estoppel against him."

The cases of *Follansbee v. Jersey City, supra; Bartlow v. Chicago, B & Q. R. Co., supra; South Park Com'rs v. Todd, supra,* cited by counsel for the defendants, may support their contention that the plaintiff has a right of action against the South Park Commissioners, but the cases do not hold that such an action would be exclusive of an action against the defendants.

The case of *Follansbee v. Jersey City, supra,* is also cited by counsel for defendants in support of their contention that the transaction between the defendants and the South Park Commissioners was a sale. We do not think that the case is in point for the reason that the court interpreted the evidence as showing that the municipality abandoned the condemnation proceedings and purchased the land from the owner. In the case at bar, as we view the evidence, the South Park Commissioners did not abandon the condemnation proceeding as to the defendants and thereafter purchase the property in question from the defendants. The South Park Commissioners paid the defendants for the property in question while the condemnation proceeding was still pending as to the defendants.

Counsel for the defendants further contend that the trial court incorrectly assessed the plaintiff's damages. The method by which the trial court estimated the plaintiff's damages, as stated by the court, was as follows:

"Measure of damages if we consider that the situation in this case is the same as though the whole property were condemned and taken: This is the proper theory in this case because after 132 feet were taken Yellow Cab Company surrendered possession of the entire property and the Lessor made no objection

to such surrender, made no demand for rent thereafter, put up a wall on the remaining part and leased it out in his own name and right, and at no time sought to hold the tenant, Yellow Cab Company, for any rent or for any difference in rent, and gave no indication that he was renting out such remaining portion on behalf of the Yellow Cab Company. Under this situation the measure of damages in this case is determined by the rule as laid down in the case of *Corrigan v. City of Chicago,* 144 Ill. 537, on page 548: 'The measure of compensation for the estate of the tenant taken is the value of her leasehold estate, subject to the rent covenanted to be paid.' Computation of Damages. The dimensions of the premises are 180 feet by 112 feet or 20,160 square feet, at 48 cents per square foot is $9,676.80 per year. The lease had one year, nine months to run or 1¾ years; $9,676.80 for 1¾ years is $16,934.40. Rent reserved in lease for 1¾ years at $6,000 per year is $10,-500. Deducting $10,500 from $16,934.40 is $6,434.40 or the value of the leasehold. Yellow Cab Company is entitled to recover judgment for the sum of $6,-434.40.''

In our opinion the court correctly estimated the plaintiff's damages. After the South Park Commissioners took possession of the east 132 feet of the property in question the part of the property remaining was 112 feet frontage with a depth of 48 feet.

Counsel for the defendants maintain that the part remaining was susceptible of occupation under the lease; that therefore the plaintiff's entire leasehold interest in the property in question was not taken, and that according to the well-settled rule prescribed in the cases of *Yellow Cab Co. v. Stafford-Smith Co.,* 320 Ill. 294, 296; *Stubbings v. Village of Evanston,* 136 Ill. 37, 43, and other cases, the plaintiff was not entitled to damages for its entire leasehold interest in the property in question, but only for the part of the leasehold that was taken; that even if it should be conceded

that the trial court adopted the correct rule as the measure of damages, the evidence does not show that the rental value of the property was 48 cents per square foot; and that the expert witnesses who testified on behalf of the plaintiff incorrectly estimated the value of the plaintiff's leasehold interest on the basis of a gross rental value.

The part remaining was about 5,200 square feet, while the original property consisted of 20,000 square feet. As one of the witnesses testified, the remaining part was "all frontage." It is true that the evidence shows that at the time of the trial of the case at bar, the remaining part was used for an automobile service station, but that is not substantially the purpose for which it was originally used. The evidence also showed that the remaining part could be used for a repair shop and for a battery business. Such uses, however, are not all of the material uses to which the original property could be put under the original lease.

In our opinion, according to the preponderance of the evidence, the property remaining was not susceptible of occupation under the lease for a purpose substantially similar to the one for which the original property was used under the lease. In this view the proper rule by which to measure the plaintiff's damages was the one which is announced in the case of Corrigan v. City of Chicago, 144 Ill. 537, supra, and which is the one the trial court adopted in the case at bar. The rule in the case of Corrigan v. City of Chicago, supra (pp. 548, 549), is that where the entire leasehold interest of the lessee is taken under the power of eminent domain, the lessee's compensation is the value of the leasehold estate, subject to the rent covenanted to be paid; that if the value exceeds the rental, the lessee will be entitled to recover the excess; that if it does not exceed the rental the lessee will be entitled to nothing.

The objection of counsel for the defendants that the expert witnesses for the plaintiff estimated the value of the plaintiff's leasehold interest incorrectly at a gross rental value, in our opinion is without merit. As we view the testimony of the plaintiff's expert witnesses, we think that when fairly interpreted the testimony shows that they estimated the plaintiff's leasehold interest correctly.

Counsel for the defendants further contend that the trial court erred in refusing the following proposition of law offered by the defendants:

"The court finds as a proposition of law, that where a lessee fails to press its case in a condemnation proceeding, and the governmental body bringing the condemnation settles with the owner by taking a deed from him, that the said lessee has no cause of action against the owner of the property and no right to any portion of the money paid to the owner under such circumstances."

We think that the ruling of the trial court was correct, as in our opinion the proposition of law does not state the law that is applicable to the facts. In such case a proposition of law should be refused. *Gray v. Callender* 181 Ill. 173, 175; *Saffer v. Lambert,* 111 Ill. App. 410, 413.

For the reasons stated the judgment is affirmed.

*Affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.