THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY *vs.* ADA S. GARRETT.—(HARVEY STRICKLER *et al.* Appellants; WILLIAM A. CHATTERTON, Appellee.)

*Opinion filed February 19, 1909—Rehearing denied April 15, 1909.*

1. APPEALS AND ERRORS—*appeal may be taken from order entered on cross-petition.* Where the petitioner in a condemnation case pays to the county treasurer, as ordered by the court, the amount of compensation awarded to the owners the petitioner's connection with the case ceases, and the owners and lienholders may appeal from an order entered on a cross-petition finding the cross-petitioner to be entitled to dower and fixing the amount, and they need not appeal from the entire condemnation judgment.

2. EMINENT DOMAIN—*rights of every character may be determined in condemnation.* The object of a condemnation proceeding is to enable the petitioner to acquire the right to take the property as against everyone having any interest therein, and anyone interested therein may become a party and have his right, whatever be its character, considered and determined, even though the claim be for unassigned dower interest.

3. LIS PENDENS—*purchaser before writ of error is sued out is protected.* When a decree affecting the title to property has been rendered by a court of equity, the rights of a purchaser who buys in good faith, relying upon the decree, before a writ of error is sued out or other action taken to avoid it, will be protected, notwithstanding the decree is afterwards reversed.

4. Same—*doctrine of lis pendens does not apply to a writ of error not a supersedeas.* The effect of a decree of divorce is to deprive the party at fault of the right of dower in the lands of the other party, and hence a purchaser in good faith who is a stranger to the decree and who purchases while the decree is in force will be protected against such dower interest, even though the decree is afterwards reversed on a writ of error which was pending when he purchased but which was not a *supersedeas.*

Appeal from the Superior Court of Cook county; the Hon. Axel Chytraus, Judge, presiding.

Wheelock, Shattuck & Newey, for appellants.

Thomas M. Headen, for appellee.

Wilson, Moore & McIlvaine, Lloyd W. Bowers, and Barton Corneau, for the Chicago and Northwestern Railway Company.

Mr. Justice Dunn delivered the opinion of the court:

The Chicago and Northwestern Railway Company filed a petition for the condemnation, for a passenger station, of certain real estate in the city of Chicago, including certain premises at Nos. 32 and 34 West Randolph street. These premises had been the property of Martha S. Chatterton, who died in January, 1905, having devised them to her son, William W. Chatterton, by whom they were conveyed to Stephen B. Jones, who conveyed them to Harvey Strickler. Both Jones and Strickler executed mortgages for part of the purchase money, and all the parties named, together with the mortgagees and William A. Chatterton, were made defendants to the petition. William A. Chatterton was the husband of Martha S. Chatterton, and the order appealed from awarded him damages for his supposed dower interest in the premises. The appellants are the owners of the fee and lienholders.

For several years prior to November, 1903, William A. Chatterton and Martha S. Chatterton were living apart. In that month her father died and under his will she became

the owner of the property involved here. She consulted her attorney about obtaining a divorce, but before a bill was filed negotiations were begun by her husband, through his attorney, for securing his interest in her property. Besides the property derived from her father Mrs. Chatterton had some property in Wilmette, in which her husband claimed an interest by reason of having contributed several hundred dollars to its purchase and improvement. It was finally agreed that Mrs. Chatterton should pay her husband $550 for a release of all his interest in her property. On January 30, 1904, Mrs. Chatterton filed her bill for divorce on the ground of desertion. No service was had, but on February 16 the appearance of her husband was entered. On March 9 he was defaulted. On March 24 a decree of divorce was granted. On March 25 the $550 was paid to his solicitor and $500 was sent to a bank in San Francisco, together with a release, with instructions to pay the money to Chatterton upon his executing the release and paying $50 solicitors' fees. On April 2 he executed the release, which was a release to Mrs. Chatterton of all his interest in her property. It was delivered to her on April 12 and was recorded May 28, 1904. Mrs. Chatterton died in January, 1905, and in June, 1906, a writ of error was sued out of the Appellate Court, upon which the decree of divorce was reversed in March, 1907, and in December, 1907, the judgment of the Appellate Court was affirmed by the Supreme Court. (231 Ill. 449.) William W. Chatterton's conveyance to Jones was made in August, 1906, while the writ of error was pending in the Appellate Court, and both he and Strickler had been told by appellee's attorney that William A. Chatterton claimed dower in the premises, and that in the opinion of said attorney the release deed of William A. Chatterton was void and the decree of divorce would be reversed.

The petition for condemnation was filed in January, 1907, and on September 10, 1907, William A. Chatterton

filed his cross-petition, which, as afterwards amended, avers the facts substantially as above stated, and alleges that the negotiations in regard to the payment to him and his release were conducted and the agreement made prior to the entry of the decree of divorce but the money was not paid until afterward; that it was agreed that his appearance should be entered in the divorce suit but no defense made, though he had a meritorious defense, which was not presented because of the agreement, and that the contract was in violation of law. The cross-petitioner prayed for a separate award of damages for his dower interest. The court entered an order finding that the parties were not entitled to a separate award and directing that compensation for the premises should be made to the owner or owners thereof, and that the petitioner might pay the award to the county treasurer of Cook county for the benefit of the owner or owners. Thereupon a jury was empaneled and a verdict returned fixing the just compensation to be made to the owner or owners of the premises at $59,000.84, which amount was paid by the petitioner to the county treasurer of Cook county for the benefit of the owner or owners. A hearing was then had on the cross-petition, answer and evidence, including a stipulation as to the facts, and a decree was entered finding that the deed of William A. Chatterton to Martha S. Chatterton releasing his interest in her property was made for the purpose of facilitating the entry of the decree of divorce and was contrary to public policy, and that William A. Chatterton was entitled to dower in the real estate and fixing its value at $8345.77.

A motion was made to dismiss the appeal. The appeal is from the order finding William A. Chatterton entitled to dower, fixing the amount and ordering its payment, and the appellants are the owners of the fee and the holders of encumbrances thereon. The grounds of the motion are, that one respondent cannot appeal from a judgment in favor of another but only the petitioner for condemnation can ap-

peal, and that if one respondent can appeal he can do so only by appealing from the entire judgment against all the parties. The motion is based upon a misapprehension. This appeal does not involve the condemnation of the property or the rights of the petitioner, the Chicago and North-western Railway Company. The petitioner's connection with the case ceased upon payment of the compensation allowed by the jury. It is not a party to the appeal. The only questions brought up by the appeal are those made upon the cross-petition of William A. Chatterton, and they arise only between him and the other parties interested in the land. The motion to dismiss the appeal will be denied.

It is insisted by appellants that the superior court, in a condemnation proceeding, exercises only statutory powers, and that it therefore had no jurisdiction of the matters involved in appellee's cross-petition, no power to inquire into the validity of the release, no authority to assess damages for an unassigned dower interest. Section 11 of the Eminent Domain act provides that any person not made a party to the proceeding may become such by filing his cross-petition, setting up that he has an interest in property which will be taken or damaged by the proposed work, and that the rights of such cross-petitioner shall thereupon be fully considered and determined. The fact that his interest is equitable, only, does not prevent its consideration and determination. The object of the proceeding is to enable the petitioner to acquire the right to take the property as against everyone having an interest therein, and everyone interested may therefore become a party and have his right, whatever may be its character, considered and determined. The jury cannot assess just compensation to each person interested in the property, as the law requires them to do, unless the interest of each person is known, and it is therefore necessary that this question should be determined by the court. This jurisdiction, whether legal or equitable, is conferred by the statute. Rights in real estate, whether cognizable

at law or in equity only, may be condemned, and the court has jurisdiction to adjudicate upon all claims of interest in the property sought to be taken or damaged. *Chicago and Northwestern Railway Co.* v. *Miller,* 233 Ill. 508; *Metropolitan West Side Elevated Railway Co.* v. *Eschner,* 232 id. 210.

The effect of a decree of divorce is to deprive the party at fault of the right of dower in the lands of the other party. (Hurd's Stat. chap. 41, sec. 14.) Therefore, whether appellee's release is held binding upon him or not, he was not entitled to dower in his wife's land until the decree of divorce was reversed. When appellants bought the property in controversy the decree was in force. Had they bought before the writ of error was sued out they would have acquired a title free from any claim of the appellee for dower, for the law is well settled that when a decree affecting the title to property has been rendered by a court of equity, the rights of a purchaser in good faith relying upon the decree before any writ of error is prosecuted or other action taken to avoid it will be protected, notwithstanding the decree is afterward reversed. *Wadhams* v. *Gay,* 73 Ill. 415; *Barlow* v. *Standford,* 82 id. 298; *Eldridge* v. *Walker,* 80 id. 270; *Hannas* v. *Hannas,* 110 id. 53; *Lambert* v. *Livingston,* 131 id. 161; *Hammond* v. *People,* 178 id. 503.

Assuming, but not deciding, that appellants had notice of the pendency of the writ of error, we are brought to the question whether they took subject to the final disposition of the case. The writ of error was not a *supersedeas.* The decree was therefore not affected by it; but, until the judgment of reversal was rendered, was valid and effectual, entitled to full faith and credit in all courts and enforceable by all appropriate means. Had it required the payment of alimony, such payment might have been enforced by execution or attachment in spite of the pendency of the writ of error. If it had been a decree of foreclosure, it might have

been executed during the pendency of the writ of error by a sale of the premises involved, and the purchaser, if not a party to the suit, would have acquired a valid title not subject to be divested by the reversal of the decree. At common law the writ of error was itself a *supersedeas* and no bail was required. A defendant, by suing out a writ of error, could stop all proceedings in execution of the judgment without giving any security whatever. (1 Tidd's Pr. 530; 2 id. 1149; Bacon's Abridgment, Supersedeas, D. 4; *Omaha Hotel Co.* v. *Kountze,* 107 U. S. 378.) To avoid this evil various acts of parliament were passed requiring security in certain cases in order that the writ of error should operate as a *supersedeas.* Section 106 of the Practice act provides that no writ of error shall operate as a *supersedeas* unless the Supreme or Appellate Court, as the case may be, or some judge thereof in vacation, after inspecting a copy of the record, shall so order, and the plaintiff in error shall file a bond as in case of appeal. Without such *supersedeas.* the doctrine of *lis pendens* has no application to a writ of error. "The writ of error without a *supersedeas* does not, of itself, stay the proceeding, and to argue otherwise would be to contend that a party might have the same relief upon a writ of error without *supersedeas* and without bond as he would be entitled to upon an appeal." (*Lancaster* v. *Snow,* 184 Ill. 163.) Everybody was entitled to act upon the decree as a valid decree, and rights acquired in good faith by strangers to the decree, whether with or without notice of the writ of error, cannot be affected by its reversal. The title of the appellants, Jones and Strickler, was not, therefore, subject to appellee's claim of dower.

The order of the superior court will be reversed and the cause remanded, with directions to dismiss appellee's cross-petition and for further proceedings consistent with this opinion.          *Reversed and remanded, with directions.*