(No. 21674.—

THE CITY OF CHICAGO, in trust for the use of schools, *vs.* JOSEPH B. McDONOUGH, County Treasurer, Appellee.— (THE CHICAGO TITLE AND TRUST COMPANY, Appellant.)

*Opinion filed December 23, 1932—Rehearing denied Feb. 14, 1933.*

Dunn and DeYoung, JJ., dissenting.

Enoch J. Price, for appellant.

John A. Swanson, State's Attorney, (Edgar B. Elder, of counsel,) for appellee.

Mr. Justice Orr delivered the opinion of the court:

Appellant seeks reversal of a judgment of the circuit court of Cook county denying, in part, its petition for payment to it of a balance of an award previously allowed by a jury in condemnation proceedings.

The undisputed facts are as follows: A petition to condemn a block of land at 109th street and avenue "H," in Chicago, for a school site, was filed February 8, 1929. Verdict was returned October 16, 1930, fixing the award at $49,530.25. Judgment was entered on this award November 1, 1930, giving the petitioner ninety days to pay the award and costs to the county treasurer of Cook county for the benefit of the owners and parties interested, and further ordering that upon proof of payment having been so made petitioner might enter into possession. On January 12, 1931, the award and costs were deposited with the county treasurer and presumably the petitioner took possession of the property. On August 6, 1931, the county treasurer paid out of the funds in his hands $47,218.31 to various parties having tax-title and other interests in the land, and to the appellant, which was admitted to be the owner of the fee title. These payments were all made with appellant's consent and are not questioned in any way. Of the total paid out, appellant received $7000. These pay-

ments left in the county treasurer's hands $2323.94, out of which he claimed the right to pay the general taxes levied on the condemned lots after the filing of the petition to condemn and prior to the payment of the award to the treasurer; that is to say, the taxes which became liens on April 1, 1929, and April 1, 1930, respectively, amounting to $1135.70, and also an estimated expense of having canceled a large number of tax sale certificates delivered to the county treasurer by the city of Chicago when it received its share of the award. This item was $265.15. The treasurer also claimed the right to record several quit-claim deeds of tax interests at an expense of five dollars. In order to test the right of the county treasurer to retain the above items and apply them as indicated, the appellant on January 19, 1932, filed its petition for an order to pay the whole balance remaining in the treasurer's hands to it, setting out the facts in detail. The county treasurer answered this petition, as slightly amended, setting up the balance still in his hands at $2323.94, and alleging that at the date the award was placed in his hands the general taxes of 1929 and 1930 were liens on the land condemned, and that by reason of the condemnation these liens attached to the fund in his hands and it was his duty to pay these liens out of the award. He also alleged that it was his duty "not only to pay all proper lienholders who have liens on a condemnation award in his hands, but also to have such documents executed and recorded and such other acts done as are necessary properly to show that the liens have been paid;" and this applies both to the cancellation of tax sale certificates, which he alleges will cost $265.15, and recording quit-claim deeds of tax titles, which will cost five dollars. The circuit court sustained appellee on all controverted points and entered an order reciting the material facts in the case and ordering the county treasurer to deduct from the portion of the award still in his hands the general taxes on the lots for 1929 and 1930, amounting to

$1135.70; to have canceled by the county clerk the tax sale certificates delivered to him by the city of Chicago and pay his fees, amounting to $265.15; to pay for recording the quit-claim deeds of tax interests delivered to him, amounting to five dollars, and to pay the balance of the fund, after said items have been deducted, to the appellant. From this order the present appeal was taken.

From the foregoing recital it must be obvious that neither a franchise, a freehold, the validity of a statute nor a construction of the constitution is here involved. The State was not made a party and is not interested within the meaning of the language of section 118 of the Practice act, for no matter what may be the outcome of this litigation, the State of Illinois, as such, cannot gain or lose. Nor can it be held that the case is one relating to the revenue, as we have repeatedly held that in order to give this court jurisdiction under the provisions of section 118 the case must relate to the revenue directly and not merely incidentally or remotely. (*Wells* v. *Rogers*, 196 Ill. 292; *People* v. *Hendee*, 199 id. 55; *People* v. *Cermak*, 317 id. 590; *People* v. *Meyer*, 328 id. 122.) The question of revenue can only be at issue when some recognized authority of the State, or some of its political subdivisions authorized by law to assess or collect taxes, are attempting to proceed under the law and questions arise between them and those from whom the taxes are demanded. (*Reed* v. *Village of Chatsworth*, 201 Ill. 480.) The issue presented here relates only to whether the appellant shall have possession of the entire sum remaining in the hands of the county treasurer or whether certain taxes and costs shall be paid and deducted therefrom. The revenue would not even be incidentally or remotely affected by the result except in point of time such taxes are paid.

We are not unmindful of the provisions of section 12 of the Eminent Domain act, requiring that "in all cases, in either the circuit or county court, or before a circuit or

county judge, an appeal shall lie to the Supreme Court." In the present case no appeal was taken from the judgment entered November 1, 1930, confirming the verdict of the jury, fixing the compensation, directing its payment into the county treasury within ninety days thereafter, and authorizing the petitioner to go upon and use the property condemned upon payment of the compensation awarded. The record shows that the petitioner complied with that order. The payment of the damages awarded is a final step in a condemnation proceeding. (*Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579; *Converse* v. *Calumet River Railway Co.* 195 id. 204; 7 Ency. of Pl. & Pr. p. 622.) Where no appeal is taken from an order of condemnation and it appears that the compensation fixed therein has been fully paid and the petitioner has entered into possession of the property, subsequent litigation involving conflicting claims as to distribution of the award is not necessarily governed by the provisions of the Eminent Domain act. The filing of a petition to ascertain compensation to be paid for property required for public use does not oust every other court of jurisdiction, lawfully acquired, to determine conflicting claims concerning the property not in any manner interfering with the appropriation of the property to a public use. (*City of Chicago* v. *Gage,* 268 Ill. 232.) A lienholder is thus not required to litigate his claim in the condemnation proceeding but may apply to a court of chancery to protect or preserve an equitable lien in funds arising from condemnation awards to the extent of his claim. (*Aldrich* v. *Ederer Co.* 302 Ill. 391; *Hooper* v. *Finlay,* 331 id. 132.) And as between conflicting claimants, an action of assumpsit for money had and received will always lie whenever one person has received money which belongs to another and which in equity and justice should be returned. (*Leigh* v. *American Brake-Beam Co.* 205 Ill. 147; *Wilson* v. *Turner,* 164 id. 398.) The determination of conflicting claims in the money award might in some

cases involve a dower or freehold interest, as it does in *Chicago and Northwestern Railway Co. v. Garrett*, 239 Ill. 297, and in such cases, of course, this court would have jurisdiction on direct appeal. But no such question is presented in the present appeal. Here no cross or intervening petition was filed in the condemnation proceeding, and the final order therein was entered November 1, 1930. On January 19, 1932, the present petition was filed for an order on the county treasurer to pay over certain moneys deposited with him and not then distributed. Section 14 of the Eminent Domain act provides that "payment of compensation adjudged may, in all cases, be made to the county treasurer, who shall, on demand, pay the same to the party thereto entitled, taking receipt therefor," etc. The statute is silent as to the procedure to be followed by the claimant in case such demand is refused by the county treasurer or where conflicting demands are filed by different persons. Whether such recovery is sought by petition afterwards filed in the same proceeding, by a bill in equity to establish an equitable lien, by an action in assumpsit for money had and received, or by any other appropriate action, is immaterial, so far as the statute is concerned. The relief sought under section 14 may be obtained equally as well in other courts outside of the one which entertained the proceedings in condemnation. It therefore follows that section 12, relating to appeals to this court, is not applicable to a proceeding in any court to determine conflicting claims in a money award paid to the county treasurer under section 14, where, as above pointed out, no question is involved which would otherwise invoke the appellate jurisdiction of this court.

This court has no jurisdiction to entertain this appeal, and the cause is accordingly transferred to the Appellate Court for the First District. *Cause transferred.*

DUNN and DEYOUNG, JJ., dissenting.