Forest Preserve District of Cook County, Illinois, Petitioner, v. Henry A. Christopher et al., Respondents.

Harry Cohen and Esther R. Cohen, Appellants, v. James Leonard and Phillip F. Walger, Appellees.

Gen. No. 42,125.

Heard in the second division of this court for the first district at the December term, 1941. Opinion filed December 14, 1943.

HYLAND J. PAULLIN, of Chicago, for appellants.

McCARTHY & TOOMEY, of Chicago, for appellees; FRANK A. McCARTHY, JOHN E. TOOMEY and JAMES JOHN CULLEN, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Forest Preserve District of Cook County filed a petition to condemn certain land. Harry Cohen and Esther R. Cohen, his wife (hereinafter sometimes referred to as appellants), as owners of a certain part of the land; the trustee in a trust deed executed by the Cohens; James Leonard, and Phillip F. Walger, were made respondents. Upon a trial of the condemnation proceedings a jury returned a verdict awarding ''to the owner or owners of *and party or parties interested in the lots, pieces and parcels of land . . . together with the improvements thereon*'' $6,000, ''as full com-

pensation to the owner or owners of *and party or parties interested in said lot, piece and parcel of land."* Judgment was entered upon the verdict and the District was ordered to pay to the county treasurer within ninety days from the entry of the order, $6,000 as full compensation "to the owner or owners thereof *and party or parties interested therein, for the taking of said lands and premises, together with the improvements thereon."* (Italics ours.) The District complied with the judgment order. No appeal was taken from the condemnation judgment.

Appellants filed *in the condemnation proceedings* a petition for an order directing the county treasurer to pay to them the $6,000 and costs. By leave of court James Leonard and Phillip F. Walger (hereinafter referred to as appellees) filed their amended answer to appellants' petition and a verified counter-petition, in which they alleged that appellants were not entitled to the entire award of $6,000 and that the counter-petitioners (appellees) had a substantial claim against this fund by reason of the matters and things set up in their counter-petition. Attached to the counter-petition was a copy of a lease of the premises in question, executed by appellants, as lessors, and appellees, as lessees. Appellants filed an answer to the counter-petition. To this answer appellees filed a reply, also an affidavit, denying the allegations in appellants' answer and affidavit. Appellants filed a counter-affidavit to the affidavit of appellees. Upon the hearing by the chancellor the court found, *inter alia,* that appellees had an interest in the property to the amount of $1,500 and the county treasurer was ordered to pay to them that sum out of the moneys deposited with him by the District. Appellants appeal from that part of the judgment order only.

The counter-petition filed by appellees alleges that for some time prior to December 8, 1938, they were desirous of starting a restaurant and tavern and

Harry Cohen represented to them that the real estate in question, which was unimproved with the exception of a small hut of no particular value, would be an ideal location for their business, and that he offered to lease the premises to them at a stipulated monthly rental; that they entered into a five-year lease of the premises with appellants on December 8, 1938, and by virtue of the terms of the lease they caused to be erected upon the premises, at great expense, a large building to house the restaurant and tavern, and fully equipped same with a bar, tables, chairs, cash register, stoves and divers other items necessary to adequately maintain such an establishment; that about March 1, 1939, when the premises were substantially completed, they were served with a summons in a condemnation cause brought by Forest Preserve District to condemn the real estate in question for forest preserve purposes. The counter-petition then states the alleged facts in relation to the hearing of the condemnation proceeding. The counter-petition further alleges that appellees are informed that appellants knew during the negotiations leading up to the execution of the lease that these premises were sought by the Forest Preserve District; that the files of the District indicate that Bernard J. Kewin, real estate agent of the District, sent a letter to appellants on January 27, 1938, advising them that the District finds from the public records that appellants were the owners of and interested in the property in question; that the District had directed that the property be acquired for forest preserve purposes, and that Kewin was authorized and directed to negotiate for and on behalf of the District with the owners or parties interested in said property for the purchase thereof by the District; that the District would be pleased to have appellants submit a proposition regarding the sale of the property to the District, and if appellants desired to confer at Kewin's office for the purpose of negotiating Kewin would be

glad to discuss the matter with them; that unless he heard from them within five days he would be compelled to turn the matter over to the law department of the District for the institution of condemnation proceedings; that on September 9, 1938, the District sent a letter to appellants advising them that on July 27, 1938, Kewin wrote them regarding the matter of acquiring for forest preserve purposes the real estate in question, that Kewin had heard nothing from them regarding same, and that on behalf of the District he offered for said property $2,250 with title delivered clear of all liens or claims of any kind whatsoever; that the offer must be accepted within five days; that failure to reply would be considered a rejection of the offer and the District would be compelled to commence condemnation proceedings at once; that appellees are informed that after the receipt of the letter of September 9, 1938, Cohen conferred with the real estate agent of the District and was again told that condemnation proceedings would be filed unless the parties came to an agreement for the sale of the property; that Cohen was offered the sum of $2,250 for this real estate, which included the hut that was then located on said premises, but which did not include appellees' improvements, as the lease had not yet been executed; that Cohen was told at this conference that if he desired to avoid the expense of defending a condemnation proceeding he should sell to the District at its price; that Cohen refused to accept this offer and the conference ended, and the matter was turned over by the District to its law department for the institution of condemnation proceedings; that shortly after the conference mentioned above, Cohen commenced negotiations with appellees for the lease and erection of the improvements contemplated by that instrument; that at no time while negotiations were pending did Cohen reveal to appellees that he had received letters from the District advising him that it desired to ac-

quire these premises, and that unless he agreed to sell condemnation proceedings would be instituted; that in spite of the action contemplated by the District, Cohen covenanted in paragraph 8 of the lease that appellees would be permitted to improve the demised premises and erect thereon necessary buildings to conduct and operate the business for which said premises were being leased, and that appellees would "have and hold the above described premises, with the appurtenances . . . from this date to and including the period ending December 31, 1943;" that Cohen knew at that time that there was no possibility of appellees' having the use of these premises during the period mentioned in the lease; that the condemnation proceeding was filed March 3, 1939, and appellees were served with summons March 9, 1939; that this constituted the first notice appellees had of the desire of the District to acquire the premises for forest preserve purposes; that they immediately communicated with Cohen and complained very strenuously of his failure to divulge the facts regarding his knowledge of the institution of the condemnation proceedings; that Cohen replied that it was his property and that he could do with it as he saw fit; that appellees then advised him that they would make no further improvements on the building nor complete the same nor open it and attempt to do business unless he agreed to compensate them out of the award for the value of their improvements, which amount could be determined by the fair cash market value of the improvements as fixed by the verdict of the jury in the condemnation case; that Cohen refused and appellees ceased working on the building and paid no further rent for the same; that at no time thereafter did Cohen ever demand of appellees rent for said premises or serve any notice of any kind seeking to terminate the relationship between the parties; that Cohen's silence and concealment of these material facts constituted a wilful, false

and fraudulent misrepresentation of a material fact known by him prior to the execution of the lease and concealed by him solely to induce appellees to enter into the lease and expend large sums of money in erecting improvements on the real estate, which he knew would in law inure to his benefit; that Cohen, during the negotiations for the lease, was represented by counsel and thus knew that the District would be required to pay the fair cash market value of the real estate with all improvements located thereon for its highest and best use as of the date of the filing of the condemnation petition, and that of this amount, he, as the owner of the fee or reversion, would receive the greater part, because in law the landlord would be entitled to the fair cash market value of the reversion plus the rents, and the tenant would be entitled only to the fair cash market value of the lease less the rents; that he also knew that if appellees were not doing business at the time of the institution of the suit, the jury would have no criterion of value, and thus appellees might receive only a nominal sum for their lease, and in this manner the improvements appellees would erect on the premises would inure to his benefit; that, consequently, appellants conspired among themselves and did not divulge to appellees the imminent institution of the condemnation proceedings and the possibility that the lease might be terminated by operation of law before appellees had an opportunity to enjoy the same; that appellees were not represented by counsel, and were entirely ignorant of the negotiations Cohen was carrying on with the District immediately prior to the execution of the lease; and appellees represent that it is wholly unjust and inequitable to allow appellants to become unjustly enriched at the expense of appellees by allowing them the fair cash market value of the improvements innocently erected by appellees on appellants' real estate, relying on the use of the same for business purposes during the

period mentioned in the lease; that although the premises are appellants' real estate and the improvements thereon have been affixed to the land, a court of equity should not extend them equitable relief and direct the payment of the entire award to them unless and until appellants offer to do equity and pay appellees what represents the fair cash market value of their improvements, which they never had an opportunity to use; that for appellants to now stand on their legal rights and refuse compensation of every kind and nature to appellees, when it was appellants' silence that caused this unfortunate occurrence, is immoral and revolting to every sentiment of justice; that appellees, therefore, believe that until appellants purge themselves of their bad faith, this court of equity should reject their application for payment of the award until appellants come into this court with clean hands and offer to do equity to appellees in accordance with the principles of justice; that appellees represent that they never intended to improve appellants' premises except for the purpose of acquiring same for use in their business; that having been deprived of the use of same by the fraudulent motives of appellants in seeking to enhance their damages from the Forest Preserve District at appellees' expense, the court should treat the improvements erected as real property between the District and appellants and personal property as between appellants and appellees, and thus allow appellees in equity the fair cash market value of the improvements as trade fixtures and belonging to the appellees as tenants.

We find that the essential facts, briefly stated, are in substance as follows: Appellees desired to start a barbecue restaurant and tavern upon appellants' land and they negotiated with appellants for a lease of the same. In a conference between Cohen and appellees, Cohen asked them if they were going to use the property for a restaurant and tavern and they said that

they were. Cohen said that he would like to have them put up a brick building upon the land and they told him that they could not see their way clear to put up such a building at that time. Cohen then asked them how much they were going to spend upon the improvements and they told him that they figured it would cost them about $5,000 before they could open their doors. The parties then agreed ''to the signing of the lease'' and appellees made a deposit of $135. Cohen was represented by a lawyer, who drew the lease. Appellees were not represented by counsel. The lease was executed on December 8, 1938, the term commenced on that date, and expired on December 31, 1943. The lease provided that the lessees were permitted to improve the premises and to erect thereon buildings in which to conduct and operate a barbecue restaurant and tavern. The lease further provided that if the parties of the second part shall perform all of the covenants in the lease ''they shall have the option to purchase the demised premises at any time within two years from the date hereof for the sum of $12,500.'' On January 27, 1938, appellants received a letter from the Forest Preserve District advising them that the District had directed that their property be acquired for forest preserve purposes and that the real estate agent of the District was authorized to negotiate with them for the purchase of the same; that as a result of negotiations between appellants and the District the latter, on September 9, 1938, wrote appellants offering the sum of $2,250 for their real estate and stating that the failure of appellants to reply would be considered a rejection of the offer and the District would be compelled to commence condemnation proceedings. Cohen admitted that upon a number of occasions he discussed with the agent of the District the matter of the sale or condemnation of the real estate, but that he made no mention to appellees of the said negotiations with the District nor of the

notices that he had received, *because they never asked him for any information regarding the matter*. When appellees signed the lease they had no knowledge that the District contemplated condemnation proceedings and that its agent had had negotiations with Cohen in reference to the same. Having a five-year lease of the premises and a provision in the lease giving them the right to purchase the property, appellees entered into possession of the premises shortly after the execution of the lease and they made many improvements upon the premises. They filled in the land from the river to the improvements, and they had practically completed a building on the premises, with the exception of a second coat of paint on the outside, when they were served with a summons in the condemnation proceeding. This was the first notice they had that such a step was contemplated by the District. They immediately saw Cohen and complained of his failure to divulge to them the facts known to him as to the intention of the District to condemn the property. Cohen then told them to open up the restaurant and he would see that they got a liquor license; that they should not hire counsel, and that he would see to it that they were reimbursed for whatever they put into the property. As Cohen refused to compensate appellees in any way they ceased work on the building and paid no further rent. Appellants thereafter never demanded rent from appellees, nor did they take any action toward terminating the lease.

Appellants contend that the counter-petition of appellees presented ''a totally foreign matter to the condemnation proceeding,'' that the condemnation proceeding was a law action and the counter-petition sets up an equitable cause of action and prays for equitable relief, and the trial court had no jurisdiction of the counter-petition. While it is true that a condemnation proceeding is a statutory law action so far as the actual procedure for taking the property is concerned,

nevertheless, the court has general jurisdiction to determine all legal and equitable liens and titles against the property. (See *Chicago & N. W. Ry. Co. v. Miller,* 233 Ill. 508; *City of Chicago v. Gage,* 268 Ill. 232.) The condemnation proceeding is brought to enable the public body to acquire the property as against everyone having any interest therein. (See *Chicago & N. W. Ry. Co. v. Garrett,* 239 Ill. 297.) The payment of the damages awarded is a final step in a condemnation proceeding and subsequent litigation involving conflicting claims as to distribution of the award is not necessarily governed by the provisions of the Eminent Domain Act. (*City of Chicago v. McDonough,* 351 Ill. 200, 204.) The object of a condemnation proceeding is to enable the petitioner to acquire the right to take the property, and when the petitioner pays to the county treasurer the compensation awarded by the jury the petitioner's connection with the case ceases. (*City of Chicago v. Gage, supra.*) In *City of Chicago v. McDonough, supra,* the Chicago Title and Trust Company, the owner of the fee, filed a petition in the condemnation proceeding asking the court to order the county treasurer to pay it the balance of the condemnation award. The treasurer answered, claiming that certain delinquent taxes were liens on this fund and that it was his duty to deduct the amount of these liens from the award and pay the same. The trial court sustained the position of the treasurer and instructed him as to the distribution of the fund. In its opinion the Supreme Court says (p. 205): "Here no cross or intervening petition was filed in the condemnation proceeding, and the final order therein was entered November 1, 1930. On January 19, 1932, the present petition was filed for an order on the county treasurer to pay over certain moneys deposited with him and not then distributed. Section 14 of the Eminent Domain act provides that 'payment of compensation adjudged may, in all cases, be made to the county treas-

urer, who shall, on demand, pay the same to the party thereto entitled, taking receipt therefor,' etc. The statute is silent as to the procedure to be followed by the claimant in case such demand is refused by the county treasurer or where conflicting demands are filed by different persons. Whether such recovery is sought *by petition afterwards filed in the same proceeding,* by a bill in equity to establish an equitable lien, by an action in assumpsit for money had and received, or by any other appropriate action, is immaterial, so far as the statute is concerned. The relief sought under section 14 may be obtained equally as well in other courts outside of the one which entertained the proceedings in condemnation.'' (Italics ours.) Appellants contend that the better practice is to determine the title and interests of parties in the real estate prior to calling the jury to determine the amount of the award. It is a sufficient answer to this contention to say that it appears from the opinion in the *McDonough* case that relief may be sought by petition filed in the condemnation proceedings after judgment.

As we have heretofore stated, the instant judgment order in the condemnation proceedings provides that the $6,000 was full compensation ''to owner or owners thereof *and party or parties interested therein* for the taking of said lands and premises, *together with the improvements thereon.''* Appellants filed their petition *in the condemnation proceedings* for the entry of an order directing the county treasurer to pay them the entire amount awarded in the condemnation proceedings. They thereby conceded that the trial court had jurisdiction to determine the rights of the parties to the fund after the condemnation proceedings were ended, and yet they deny the right of appellees to also appear and present their claim for a portion of the sum awarded. We hold that there is no merit in the instant contention.

Appellants contend that "the facts alleged and proven by appellees did not constitute fraud and deceit and failed to establish a liability on the part of appellants. (a) In the absence of a duty to speak, silence as to a material fact does not constitute fraud. (b) Appellants as owners had a legal right to rent the property or deal with it in any manner they saw fit until the judgment upon the award in the condemnation proceedings was paid." To this contention appellees respond that "the undisputed evidence shows that petitioners [appellants] were guilty of bad faith in concealing from respondents matters that would have prevented them from signing the lease and making improvements on petitioners' real estate. (a) Respondents [appellees] were not obliged to show that petitioners were guilty of actual fraud. (b) Owners of property can deal with it in any manner they see fit, but they must use ordinary good faith in their dealings with vendees or lessees." In view of the facts in this case it is difficult to believe that the instant contention of appellants is seriously made, nevertheless, we find them boldly asserting that they owed no duty to appellees to apprise them, before the lease was signed, that the District intended to acquire the property by condemnation proceedings. Appellants were represented by an attorney at the time of the making of the lease, appellees were not, and appellants undoubtedly knew that if they divulged the facts in reference to the attitude of the District that appellees would not enter into the lease and make extensive improvements on the property. The present attitude of appellants makes it plain that they figured at the time of the making of the lease that any improvements made by appellees would inure to appellants' benefit in the condemnation proceedings. While it is true that an owner of real estate can do what he wishes with his property until the condemnation petition is actually filed, that rule does not apply

to the instant situation. Appellants were guilty of bad faith and unconscionable conduct in their dealings with appellees, and in the light of the plain facts it would be a serious reflection upon equity if their instant contention were sustained. It is a significant fact that prior to the execution of the lease Cohen tried to induce appellees to erect a brick building upon the premises instead of a frame building, and that he was anxious to know the amount of money they intended to expend upon the improvements.

In *Cable v. Ellis,* 120 Ill. 136, the court states (p. 152):

"The general rule of law as to improvements unquestionably is, that improvements made upon real estate, of a fixed and permanent character, and attached to the realty, by one who has no title or interest in the premises, and *without the consent of the owner of the fee,* become a part of the realty, and vest in the owner of the fee. (*Mathes v. Dobschuetz,* 72 Ill. 438; *Dooley v. Crist,* 25 id. 556.) But courts of equity have not hesitated to soften the harshness and rigor of the rule of law, when the circumstances of the case and the relation of the parties required it to be done to meet the ends of justice." (Italics ours.)

It must be noted that in the instant case the improvements were made not only with the consent and approval of appellants but that they undoubtedly would not have executed the lease if appellees had not told Cohen of the large amount they were going to expend in making the improvements.

In *Olin v. Reinecke,* 336 Ill. 530, the court states (p. 534):

"The general rule at law is, that if a stranger enters upon the land of another and makes an improvement by erecting a building the building becomes the property of the owner of the land. (*Dooley v. Crist,* 25 Ill. 453; *Mathes v. Dobschuetz,* 72 id. 438; *Crest v. Jack,* 3 Watts, (Pa.) 238; 1 Hilliard on Real Prop. 5.) In equity, however, if the owner stands by and permits

another to expend money in improving his land he may be compelled to surrender his rights to the land upon receiving compensation therefor, or he may be compelled to pay for the improvements. In such cases there is always some ingredient which would make it a fraud in the owner to insist upon his legal rights. Such an ingredient may consist in the owner encouraging the stranger to proceed with the improvement, or where one party acts ignorantly and without the means of better information and the other remains silent when it is in his power to prevent the expenditure of the money under a delusion. It has been held in such cases that to permit one to take advantage of the mistake of another would be revolting to every sentiment of justice.''

The court further states (p. 535):

''In Pomeroy's Equity Jurisprudence (vol. 2, sec. 867, p. 1782,) it is said: 'Now, the effects of a pure mistake upon the rights of the suffering party are the same as injuries and call as loudly for relief as those of fraud. Furthermore, although in the original mistake there is no element of immorality, yet afterwards, when the mistake is discovered and the party benefited insists upon retaining the advantages and refuses to voluntarily correct the error but plants himself upon the strict legal rights which the erroneous writing gives him, there is a very shadowy distinction between the immoral character of his conduct and that of the person who intentionally, by means of representations and concealments, induces another to enter into an agreement; and for this reason we find judges constantly describing the conduct of persons in such a situation, who insist upon holding the advantages accidentally obtained by mistake, as fraudulent, and the persons themselves as guilty, from a moral point of view, of virtual, if not actual, fraud.' ''

While it is true, as appellants argue, that mere silence does not amount to fraud, nevertheless, as stated

by the law writers, there are times and occasions when it becomes the duty of a person to speak, in order that the party he is dealing with may be placed on an equal footing with him, and when a failure to state a fact is equivalent to a fraudulent concealment, and amounts to fraud equally with affirmative falsehood.

In *Stewart v. Wyoming Ranche Co.*, 128 U. S. 383, the court said (p. 388):

"In an action of deceit, it is true that silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud celare;* a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, that is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

We have considered several technical points raised by appellants and find them without any substantial merit.

There is ample evidence in the record to show that the value of the improvements upon the premises made by appellees amounted to $1,500. The judgment order in this cause, entered by an able and conscientious chancellor, is a just one and it should be and it is affirmed.

*Judgment order affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.