65 So.2d 858 (1953)
BISCAYNE BOULEVARD PROPERTIES, Inc. et al.
v.
GRAHAM.
Supreme Court of Florida, en Banc.
June 2, 1953.
Rehearing Denied July 16, 1953.
*859 Sibley & Davis, Miami Beach, for appellants.
Kurtz, Reed, Sappenfield & Cooper, Miami, for appellee.
HOBSON, Justice.
We recognize the fact that this Court has laid down the general principle of law which counsel for appellants contend is applicable in the instant case. In Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823, 824, we stated said principle in the following language:
"In Wheeler v. Baars, 33 Fla. 696, 15 So. 584, we held:
"`A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance.'"
However, we must likewise take cognizance of the universally accepted rule that whether actually such a false representation was made is a question of fact. Both the special master and the Chancellor resolved the query whether there had been a false representation of a material fact amounting to a fraud, against appellant. Evidently the master invoked the rules which we have repeatedly pronounced that fraud is never presumed and that the burden of proof is on the party who asserts it. We have held many times that fraud can be established only by clear and convincing evidence and that every one of the elements making up fraud must be clearly proven.
We have concluded, upon a careful examination of the transcript of the record, that the special master, as well as the Chancellor was unquestionably correct in holding that the appellants failed to prove the alleged misrepresentation which was tantamount to a charge of fraud, by clear and convincing evidence. The rules invoked herein with reference to the burden and character of proof which must be carried and made in order to sustain a charge of fraud are all the more applicable in a case wherein, as here, the party charged with the fraud dies before testimony is taken. Barnes v. Willis, 65 Fla. 363, 61 So. 828; Green v. First National Bank of Marianna, 85 Fla. 51, 95 So. 231. Indeed, in such a case parol evidence should be not only clear, positive, unequivocal and convincing but should be of a conclusive, or well nigh conclusive character. Certainly, testimony which suggests fraud by inference or conjecture only is insufficient to meet the degree of proof required in a case of the type under consideration.
Moreover, the witness Wesley McCravy, upon whose testimony appellants relied to establish the alleged misrepresentation by silence or passive assent, was not only an employee of the purchaser, Mr. Childers, but is also his nephew. The special master and the Chancellor had the right to consider such facts in determining the weight which should be given to McCravy's testimony, particularly in light of the fact that the seller who is charged with misrepresentation amounting to fraud died before evidence was taken in this cause. Then too, there is no showing that Mr. Childers was in need of a guardian or that he was inexperienced in the purchase and sale of real property. Indeed, the record shows that he had previously engaged in such transactions. It should have been obvious to him when he received his deed that it only conveyed to him "the Northeasterly 15 feet of Lot 4, according to plat of subdivision of Government Lot 2, of Section 33, Township 52 South, Range 42 East, as recorded in plat book 3, at page *860 55, of the Public Records of Dade County, Florida."
It has been suggested that appellants should have prevailed in the court below upon the theory of a mutual mistake. While it may be true that a mutual mistake as to the quantity of land conveyed might justify an abatement in the purchase price, it is well established that the pleading of the party charging a mutual mistake must allege in clear and positive terms that a mutual mistake did in fact exist at the time of the transaction and, what is more important, it is apodictic under our adjudications that after making such an allegation the burden rests upon the party charging a mutual mistake to establish by clear and convincing evidence the existence of such a mistake. Appellants failed in the first instance to allege in clear and unambiguous language that there had been a mutual mistake and, in the second place, they did not even attempt to prove a mutual mistake but relied in their pleading and in the proof upon conduct which they contend amounted to misrepresentations tantamount to fraud. There is no basis in this record even for a suggestion that the final decree from which this appeal is prosecuted should be reversed upon the theory that the appellants alleged and proved a mutual mistake.
Affirmed.
TERRELL, THOMAS, SEBRING, MATHEWS and DREW, JJ., concur.
ROBERTS, C.J., dissents.
ROBERTS, Chief Justice (dissenting).
There was no conflict in the testimony respecting the transaction here in question, and in my opinion the circumstances were such as to justify equitable relief in the form of an abatement of the purchase price of the property here involved.
The appellant Childers' claim for equitable relief was predicated on an alleged misrepresentation of the quantity of a parcel of land (designated Parcel 3) conveyed to Childers by one Graham, the appellee's decedent, who died during the pendency of this suit. The evidence showed that Childers had previously bought from Graham in two parcels (designated Parcels 1 and 2) land adjoining Parcel 3; and, desiring to purchase an additional 300 feet for use as a parking lot in connection with a business he maintained on Parcels 1 and 2, he approached Graham with an offer to purchase such additional 300 feet. There was present at the conference one McCravy, a former employee of Childers, who testified as follows:
"Mr. Graham said, `Art, why don't you take the whole thing all the way back to the bay?' And Mr. Childers said, `It would cost too much money to fill it in' and he didn't need it and he said `Well, I will give you a buy on it and you pay me some of it and the rest of it later.' Mr. Childers said, `I don't need that much property.' And he turned around to me and said, `Maybe someday we can build a bay front home on there for you.' That was what transpired back there."
Later, in response to the question, "Did he give you any showing as to what he meant by, `Take this property on back to the bay?', McCravy testified: "Well, he just said, `Take the property on back to the bay,' and made a motion with his hands, and naturally I understood that the property went on the same depth all the way back to the bay."
As shown by a map drawn to scale which was introduced in evidence by the appellant, the property conveyed by Graham to Childers (Parcels 1, 2 and 3) was one of three contiguous strips of land abutting on the west the Federal Highway and extending due east to the section line, at which point they "dog-legged" to the southeast and extended on to Biscayne Bay. The two southernmost strips were each the same width at their western boundary on the Federal Highway as they were at the Biscayne Bay boundary, to wit, approximately 187 feet. The northernmost strip (being Parcels 1, 2 and 3) was likewise 187 feet wide at its western boundary; however, at the point where it "dog-legged" to the southeast, it was only 15 feet wide from that point on to the Bay. Thus, the parcel conveyed *861 by Graham to Childers, as Parcel 3, comprised a strip of land 187 feet wide and something over 1000 feet long up to the section line, at which point it narrowed down to a strip 15 feet wide and 560 feet long to the Bay.
It was also shown that Childers had an interest in one of the strips of land above mentioned  the southernmost strip  which he had filled in and bulkheaded.
Since Graham died during the pendency of this suit, Childers, as a party in interest, was not allowed to testify as to his negotiations with Graham; nor, of course, do we have the benefit of Graham's version of the transaction. It is perfectly clear to me, however, from the testimony of McCravy, together with the other facts mentioned above, that Childers thought he was buying a strip of land 187 feet wide all the way to the Bay; and, in fact, the Chancellor so found in denying to the appellee a deficiency decree. It is equally apparent either (1) that Graham was of the same impression, that is, that the strip was 187 feet wide at its bay boundary, or (2) that he deliberately induced Childers to buy the remainder of the strip, knowing that a portion of it was only 15 feet wide, and knowing that Childers thought he was getting the same width all the way to the bay, as in the other strip in which he owned an interest. There can be no doubt that a mutual mistake as to the quantity of land conveyed would justify an abatement in the purchase price; on the other hand, if Graham was not mistaken, and actually knew that the strip was only 15 feet wide, then, in my opinion, his entire course of conduct in the transaction, as recounted by McCravy, is sufficient to charge him with deceit in the transaction. See Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823; 23 Am.Jur., Fraud and Deceit, Sec. 78, page 854; Forest Preserve District of Cook County v. Christopher, 321 Ill. App. 91, 52 N.E.2d 313. While the appellant does not appear to be entitled to a rescission, it is my opinion that, in equity and good conscience, he is entitled to an abatement in the purchase price on account of the shortage in the quantity of land conveyed to him.
I would reverse the decree of the lower court and remand the cause, with directions to the Chancellor to enter a decree in accordance with the opinions herein expressed.