THE CITY OF CHICAGO, Plaintiff, v. AMERICAN NATIONAL BANK AND TRUST COMPANY, as Trustee, Defendant-Appellee (Mitchell Edelson, Jr., *et al.*, Defendants-Appellants).

First District (2nd Division) No. 1—90—0602

Opinion filed August 11, 1992.

Mitchell Edelson & Associates, of Chicago (Mitchell Edelson, Jr., of counsel), for appellants.

Burke & Ryan, of Chicago (William E. Ryan and Arthur N. Christie, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Tenants of a landmark building taken by condemnation petitioned for apportionment of the condemnation award. Their leases all contained clauses providing that they would have no right to share in any condemnation award. In their complaints, the tenants alleged that the landowner induced them to sign the leases with fraudulent representations that the building, as a landmark, could not be condemned. The trial court dismissed the complaint, finding that the landowner could not know of the possibility of condemnation prior to the formal commencement of condemnation proceedings and that the landowner had no duty to inform prospective tenants of condemnation proceedings in progress because those proceedings were a matter of public record. We reverse.

On January 30, 1989, the City of Chicago (the City) filed a complaint for condemnation of the McCarthy Building, located at 30-32 West Washington Street, naming as defendants the building's owner, appellee American National Bank & Trust Company, and its tenants, including appellants Mitchell Edelson, Jr., The Law Offices of Mitchell Edelson, Jr., My Husband's Cookies and Grandma Gebhard's Cookies. On the City's motion for vesting of title, the trial court made a preliminary finding that just compensation for taking the building was $1,250,000, and the court ordered the City to deposit that amount with the county treasurer.

On November 27, 1989, appellants filed petitions for apportionment of the award. The trial court granted appellee's motion to strike the petitions and appellants moved for reconsideration. The court denied the motion in an order accompanied by a memorandum of decision which clarified that the court dismissed the petition without leave to amend because the facts stated in the petition were contrary to facts of which the court took judicial notice. This appeal involves only

the adequacy of the allegations of the petitions in light of facts judicially noticed.

According to the petitions and the attached exhibits, which constitute part of the pleadings (*First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 13, 425 N.E.2d 11, 14), Edelson executed a seven-year lease for the fifth floor of the McCarthy Building on May 15, 1986, when the building was an official Chicago landmark. Through its agent, George Landfield, appellee "knowingly and unlawfully misle[d], deceiv[ed], and misinform[ed] Edelson as to the imminent sale, condemnation, [or] taking by eminent domain *** [of] the building," by giving Edelson "assurances that the building could not be condemned or demolished because of its (landmark) status" when appellee "knew, or should have known, [of] the imminent public announcement of the loss of 'landmark' status and of the sale [or] taking by eminent domain." Relying on appellee's representations, Edelson signed the lease and made improvements on the premises. The improvements have a reasonable value of $37,000.

Grandma Gebhard's Cookies alleged in its petition that it executed a lease for space in the McCarthy Building for a term of five years, beginning on May 1, 1985. The lease was "procured by [appellee's] fraudulent representations that the premises would not, and could not, be condemned." Grandma Gebhard's Cookies made improvements and added fixtures reasonably valued at $110,000 in remodeling the premises for its use.

My Husband's Cookies alleged that it leased a portion of the McCarthy Building for a term of six years beginning June 1, 1988. The lease was "procured by [appellee's] fraudulent misrepresentation that the premises could not be condemned during the lease term," which appellee made when it "was aware *** that the building would be condemned within a short period of time." My Husband's Cookies spent $26,000 remodeling the premises.

All three petitions include allegations that appellee

"knew but refused to reveal the fact that the building was to be condemned. Instead [appellee] offered evidence the property would last regardless of historic landmark status, the tenants entered leases thinking leasehold improvements made by the tenants could be amortized over their term of the leases and they would receive a reasonable return on their investment."

In considering appellee's motion to strike the petitions, the trial court took judicial notice of litigation concerning the McCarthy Building's landmark status and the statement of facts contained in our supreme court's decision finally determining that litigation, *Landmarks*

*Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 531 N.E.2d 9. A report prepared for the Commercial District Development Commission (the Development Commission), made available to the public on August 18, 1987, emphasized the importance of developing the block which included the McCarthy Building, and it "set forth serious design constraints that *** would not permit the development to go forward without encroaching upon the site occupied by the McCarthy Building." (*Landmarks Preservation Council,* 125 Ill. 2d at 171-72, 531 N.E.2d at 12.) Therefore, the report recommended condemnation of the building.

In accord with the Development Commission's recommendation, the City rescinded the McCarthy Building's landmark status by ordinance passed on September 23, 1987, eight months before My Husband's Cookies' lease date. (*Landmarks Preservation Council,* 125 Ill. 2d at 167, 531 N.E.2d at 10.) Landmarks Preservation Council then sued the City and the building's owner, appellee herein, alleging that the city council had not followed legally necessary procedures for rescinding landmark status. Landmarks Preservation Council appealed the dismissal of its complaint to our supreme court, which filed its decision affirming the trial court on September 22, 1988, and denied the petition for rehearing on December 5, 1988.

In granting appellee's motion to dismiss the petitions for apportionment, the trial court stated that, based on the facts in *Landmarks Preservation Council,* it found:

"[I]n 1985 and '86 it was not possible for the landlord to have any inkling that there was going to be a change in the landmark status of the McCarthy building. As a matter of fact, *** this issue was not resolved until December 5th of '88 by the Supreme Court.

Hence, those leases executed in 1985 and '86 cannot be challenged on the allegation that the landlord knew of a change in the status of the McCarthy building and hid same from the tenants.

In 1988 any lease executed therein the representations must be viewed in view of all the facts of which the tenant had actual knowledge and also such as he might have had had he availed himself in the exercise of ordinary prudence. A person in possession of his mental faculties is not justified in relying upon representations before he acts."

Appellants filed a combined motion for reconsideration, and in the motion they added the allegation that:

"City representatives, commercial developers and property owners conducted non-public discussions, meetings and proceedings regarding the future status of the McCarthy Building and [appellee's agents] were notified of and/or attended said discussions *** and, thus, knew (or should have known) that the City was likely to divest the McCarthy Building of its protected 'Landmark' designation, and take possession of the Building, prior to the termination of Tenants' lease terms."

The trial court denied the motion to reconsider, restating its holding that the facts alleged in the petitions were inconsistent with the facts of which it took judicial notice.

■■ Appellants contend that their petitions adequately state grounds for apportionment of the condemnation award. Section 7—106 of the Illinois Code of Civil Procedure provides that, in eminent domain proceedings:

"[a]t any time after the plaintiff has taken possession of the property ***, any party interested in the property may apply to the court for authority to withdraw for his or her own use his or her share (or any part thereof) of the amount preliminarily found by the court to be just compensation *** as such share shall have been determined by the court." (Ill. Rev. Stat. 1989, ch. 110, par. 7—106.)

Thus, a party seeking apportionment of a condemnation award must allege an interest in the property which is the subject of the condemnation proceedings. Tenants holding under valid leases have an interest in property sufficient to entitle them to compensation in eminent domain proceedings. (*Department of Public Works & Buildings v. Metropolitan Life Insurance Co.* (1963), 42 Ill. App. 2d 378, 384, 192 N.E.2d 607, 610.) Therefore, each petition was facially sufficient in that each contained allegations that the appellants leased space in the building subject to condemnation.

However, each petition also included the lease provision which excluded the appellants from sharing in any condemnation award. In order to avoid this provision, each petition contained allegations that the lease was procured by fraud. Although the petitions do not include the request explicitly, the parties and the trial court treated the petitions as requests for equitable reformation of the leases to exclude the clause which precluded sharing of the condemnation award. With that reformation the leases would entitle appellants to compensation. The trial court had power to grant the reformation sought if appellants proved that appellee acted fraudulently. (*Biren v. Kluver* (1976), 35 Ill. App. 3d 692, 696, 342 N.E.2d 325, 328; see also *Rouse Wood-*

*stock, Inc. v. Surety Federal Savings & Loan Association* (N.D. Ill. 1986), 630 F. Supp. 1004.) Thus, the petitions are sufficient if they set forth the ultimate facts necessary to establish the fraud which would entitle appellants to reformation of their leases. See *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009.

 The elements of a cause of action for fraud are:

"a false statement of material fact was intentionally made, *** the party to whom the statement was made had a right to rely on it and did so, *** the statement was made for the purpose of inducing the other party to act, and *** reliance by the person to whom the statement was made led to his injury. [Citation.] Intentional concealment of a material fact is the equivalent of a false statement of material fact. [Citation.] Where a person has a duty to speak, his failure to disclose material information constitutes fraudulent concealment." *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 161, 510 N.E.2d 409, 413.

Each of appellants' petitions includes allegations that appellee's agent represented to each appellant that the building could not be condemned because of its landmark status, when appellee knew that the premises could be condemned shortly. Each petition includes allegations that appellants relied upon the representations when they entered into their leases. The facts alleged in the petitions sufficiently support an inference that appellee represented that the building could not be condemned for the purpose of inducing appellants to sign the leases. Each petition contains further allegations that reliance on the representations led appellants to sign the leases and expend substantial sums improving the property, to their injury.

The three petitions also include allegations that appellee "knew but refused to reveal the fact that the building was to be condemned." The intentional concealment of such a material fact would constitute fraud if appellee had, under the circumstances of this case, a duty to speak. In *Forest Preserve District v. Christopher* (1943), 321 Ill. App. 91, 52 N.E.2d 313, a landowner rented his property to a tenant who sought, with the landowner's encouragement, to erect a tavern on the land. Four months after the tenant signed the lease, and shortly after the tavern was substantially completed, the Forest Preserve District (the District) commenced condemnation proceedings against the landlord. The tenant claimed part of the condemnation award for the fair cash value of the improvements, although they were affixed to the land and, therefore, sole property of the owner.

(*Christopher*, 321 Ill. App. at 97-98, 52 N.E.2d at 315-16.) Following trial, the court granted the tenants the relief requested, based upon evidence that the owner knew that the District contemplated condemnation proceedings due to his contacts with the District, which began almost a year before the execution of the lease, and the owner failed to inform the tenant of the possible condemnation proceedings before he signed the lease and built the tavern. (*Christopher*, 321 Ill. App. at 93, 99-100, 52 N.E.2d at 314, 316-17.) The appellate court affirmed the award, holding:

> " '[I]f the owner stands by and permits another to expend money in improving his land[,] *** upon receiving compensation [for the land] he may be compelled to pay for the improvements. In such cases there is always some ingredient which would make it a fraud in the owner to insist upon his legal rights. Such an ingredient may consist in the owner encouraging the stranger to proceed with the improvement, or where one party acts ignorantly and without the means of better information and the other remains silent when it is in his power to prevent the expenditure of the money under a delusion. It has been held in such cases that to permit one to take advantage of the mistake of another would be revolting to every sentiment of justice.' [*Olin v. Reinecke* (1929), 336 Ill. 530, 534, 168 N.E. 676, 678.]
>
> * * *
>
> '*** [I]f, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, that is *** equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.' [*Stewart v. Wyoming Cattle Ranche Co.* (1888), 128 U.S. 383, 388, 32 L. Ed. 439, 9 S. Ct. 101, 103.]" *Christopher*, 321 Ill. App. at 104-06, 52 N.E.2d at 319.

■ Under *Christopher*, the failure to reveal to a prospective tenant impending condemnation proceedings can constitute fraud, and therefore, the allegations of all three petitions of the ultimate facts that appellee knew, but failed to reveal that the building was to be condemned, together with appellants' reliance and damages, are suffi-

cient allegations of fraud. (See *Carriage Way West, Inc.*, 88 Ill. 2d at 309-10, 430 N.E.2d at 1009-10.) The petitions did not need to include more specific allegations of when and how appellee came to know that the building was to be condemned, as these would be evidentiary facts which need not be set forth in the pleadings. (*Carriage Way West, Inc.*, 88 Ill. 2d 300, 430 N.E.2d 1005.) Hence, the allegations of the petitions are sufficiently specific to state a claim for apportionment of condemnation proceeds, and the dismissal of the petitions was improper unless the facts stated in the petitions contradict facts of which the trial court properly took judicial notice.

The trial court properly took notice of the facts stated in a published opinion of our supreme court. (*In re O'Malley* (1949), 404 Ill. 257, 258, 88 N.E.2d 881, 882.) The *Landmarks Preservation Council* decision states that the Development Commission's report, which found that the continued presence of the McCarthy Building would severely inhibit development of the North Loop, was not made available to the general public until August 18, 1987. There is no indication in the opinion of when the Development Commission or its planning department first contacted appellee, the owner of the McCarthy Building, or of the extent to which the owner was involved in the investigation and discussions which led to the public report. There is no indication of when the owners, who cannot be considered merely members of the general public, could have been aware of a substantial possibility that the building would lose its landmark status and be taken by condemnation.

In the relatively simple condemnation proceeding involved in *Christopher*, the owner of the condemned land knew that the District was considering condemnation of his land more than a year before the District formally instituted condemnation proceedings, when the general public and the tenant were first informed that the land might be taken. The condemning authority would very likely have had contacts with the landowners involved in the North Loop redevelopment project more constantly, and for a longer period of time before public announcement, than would the District in *Christopher*. Nothing in *Landmarks Preservation Council* is inconsistent with appellants' claim that appellee knew the building could be condemned, despite its landmark status, as early as 1985 or 1986, when Grandma Gebhard's Cookies and Edelson signed their leases. There is also no inconsistency between the facts stated in *Landmarks Preservation Council* and the allegation that appellee failed to inform appellants of material information regarding the possibility of condemnation, when appellee's access to such information was far superior to appellants' access.

The facts judicially noticed establish that appellee knew of the already existing condemnation proceedings when it allegedly told My Husband's Cookies that the property could not be condemned due to its landmark status. The trial court found the allegations of the petition insufficient because the Development Commission had published its report on the building, the city council had passed an ordinance rescinding landmark status, and litigation concerning the landmark status was underway, all before My Husband's Cookies signed its lease. The trial court found that appellant would have discovered these facts before it signed the lease if it had exercised ordinary prudence.

The trial court did not explain, and the record does not show, how My Husband's Cookies would have found this information. There is, for example, no fact judicially noticed showing that stories concerning the landmark status of the McCarthy Building were prominently featured in newspapers or television reports. On the record before the trial court, it must have imposed upon all tenants a duty to search for published Development Commission reports, city council proceedings, and lawsuits concerning their buildings, or forfeit the right to claim misrepresentations of matters which could have been discovered in such a search.

■ The trial court relied upon the principle that "[a] person in possession of his mental faculties is not justified in relying upon representations before he acts." This, which is a restatement of the principle of *caveat emptor*, is not the law in Illinois. In this State, a person charging another with fraud must show that his reliance upon the fraudulent representations was reasonable under the circumstances. *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 409, 454 N.E.2d 723, 729.

> " 'It is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.' " (*First Arlington National Bank*, 118 Ill. App. 3d at 409-10, 454 N.E.2d at 729, quoting W. Prosser, Torts § 108, at 718 (4th ed. 1971).)

There is nothing in the record to indicate how My Husband's Cookies could have known, from a cursory glance, that it should disbelieve appellee.

■ The three petitions do not clearly and cogently set forth their essential allegations; the allegations specifically relating to Grandma Gebhard's Cookies are particularly ill-framed. All three petitions contain matters which are irrelevant to the apportionment proceedings.

For purposes of this motion, the court must ignore the extraneous material. (*In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 334, 326 N.E.2d 464, 467.) All three petitions contain sufficient factual allegations of fraud to establish an issue of fact that will determine whether each appellant has a right to equitable reformation of its lease. Therefore, we reverse the trial court's decision to dismiss the petition and remand for further proceedings.

Reversed and remanded.

HARTMAN, P.J., and SCARIANO, J., concur.